CHUBB LLOYDS INSURANCE
COMPANY OF TEXAS,
Appellant,

v.

Terrie KIZER, Appellee.

Kris KIZER and Terrie Kizer, Appellants,

v.

CHUBB LLOYDS INSURANCE
COMPANY OF TEXAS,
Appellee.

No. 2–96–093–CV.

Court of Appeals of Texas,
Fort Worth.

April 10, 1997.

Rehearing Overruled May 22, 1997.

Russell W. Schell, John K. Vaughan, Pamela J. Touchstone, Schell, Beene & Vaughan, L.L.P., Dallas, Richard L. Arnold, Law Offices of Richard L. Arnold, Dallas, Michael Sean Quinn, Austin, for Appellant.

Richard L. Arnold, Law Offices of Richard L. Arnold, Dallas, Michael Sean Quinn, Austin, Russell L. Schell, John K. Vaughan, Pamela J. Touchstone, Schell, Beene & Vaughan, L.L.P., Dallas, for Appellee.

Before CAYCE, C.J., and DAY and BRIGHAM, JJ.

## OPINION

DAY, Justice.

In this case, we consider whether we should extend the Texas Supreme Court's holding in *Kulubis,* that an innocent spouse can recover for separate property when the other spouse intentionally burned the family home, to cover an innocent spouse's share of community property. *See Kulubis v. Texas Farm Bureau Underwriters Ins. Co.,* 706 S.W.2d 953, 955 (Tex.1986). The Fifth Circuit Court of Appeals has twice refused to do so. *See Webster v. State Farm Fire & Cas. Co.,* 953 F.2d 222, 223 (5th Cir.1992); *Norman v. State Farm Fire & Cas. Co.,* 804 F.2d 1365, 1366 (5th Cir.1986). The Amarillo Court of Appeals has extended the *Kulubis* holding to include property that was community property when destroyed but was converted to separate property before the innocent spouse "established her claim." *See*

*Travelers Cos. v. Wolfe,* 838 S.W.2d 708, 712 (Tex.App.—Amarillo 1992, no writ). However, we find the reasoning of the Fifth Circuit persuasive and hold that there can be no recovery for community property when one spouse burns the family home. Accordingly, we reverse and render judgment.

Kris and Terrie Kizer, husband and wife, purchased standard homeowner's insurance from Chubb Lloyds Insurance Company ("Chubb Lloyds"), insuring their house and its contents. The house was the husband's separate property. However, the contents of the house were presumptively community property, and the Kizers have not argued otherwise. *See* TEX.FAM.CODE ANN. § 5.02 (Vernon 1993). The property was destroyed by fire, and the Kizers sued Chubb Lloyds for coverage. The jury found the fire was intentionally set by, or with the participation of, Kris Kizer. Accordingly, he recovered nothing for the house or its contents. However, the trial court awarded Terrie one-half of the contents coverage and attorneys' fees. All parties appeal.

Kris raises two points of error. He first argues that the trial court erred by refusing admission of the audio portion of a videotape made by the Flower Mound Fire Department during its initial scene investigation of the fire as hearsay because the video was a present sense impression, an excited utterance, and a public record and report. Next, he maintains that the trial court erred by denying him a new trial on the issue of Chubb Lloyds's contract liability because the jury finding that the fire was set by, or with the participation of, Kris was contrary to the overwhelming weight and preponderance of the evidence, or alternatively, there was insufficient evidence to support the finding. Chubb Lloyds's sole point of error is that the trial court erred by permitting Terrie any recovery for her half of the house's contents after a jury finding that the fire was set by, or with the participation of, Kris because the property was community property and any payment by the carrier would be community property and would benefit the guilty spouse. Terrie contends that the trial court erred by

failing to award her recovery to the full extent of her insurable interest in the insured property. We reverse and render judgment as a matter of law on Chubb Lloyds's point of error.

## FACTS

Chubb Lloyds issued a standard "Texas Homeowner's Form B" insurance policy to Terrie and Kris insuring their house. The house and its contents were destroyed by fire on February 2, 1993. The Flower Mound Fire Department investigated the fire and concluded it was intentionally set. After the Kizers notified Chubb Lloyds of the fire and asked it to cover the loss, Chubb Lloyds investigated the fire. Chubb Lloyds retained a cause and origin expert who also determined that the fire was intentionally set. Based on these investigations, Chubb Lloyds determined that it was likely that one of the Kizers was responsible for starting the fire and denied coverage for the fire loss. The Kizers then filed suit for coverage under the policy. Chubb Lloyds raised the defense that the fire was set by, or with the participation of, one of the insureds, thus, its denial was proper.

During trial, the Kizers offered as evidence a videotape made by a lieutenant of the Flower Mound Fire Department with his personal camera at the time of the fire department's investigation. This tape was included in the fire department's file. Chubb Lloyds objected that the audio portion was inadmissible hearsay, and its objection was sustained. The video portion of the videotape was admitted. The Kizers made no offer of proof regarding the audio portion of the videotape.

In response to specific jury questions, the jury found that the fire was intentionally set by, or with the participation of, Kris, but was not intentionally set by, or with the participation of, Terrie. Based on these findings, the trial court awarded Terrie $87,000 for the value of one-half of the house's contents, i.e., one-half of the personal property coverage on the Chubb Lloyds policy, and $34,800 for

attorneys' fees. It awarded no recovery to Kris. We will first consider Kris's points of error.

## KRIS'S COMPLAINTS

### Videotape Evidence

In his first point of error, Kris asserts that the trial court erred by refusing to admit the audio portion of the videotape made during the initial investigation of the fire as hearsay. He argues that the evidence was admissible as a present sense impression, as an excited utterance, and as a public record and report. See TEX.R.CIV.EVID. 803(1), (2), (8). However, we hold that any error the trial court may have made by failing to admit the audio portion of this tape into evidence is waived. Texas Rule of Civil Evidence 103(a)(2) provides that error may not be based on a ruling that excludes evidence unless the substance of the evidence was made known to the court by offer of proof. TEX.R.CIV.EVID. 103(a)(2). When a trial court excludes evidence, a failure to make an offer of proof waives any complaint about the exclusion on appeal. See Porter v. Nemir, 900 S.W.2d 376, 383 (Tex.App.—Austin 1995, no writ); Weng Enters., Inc. v. Embassy World Travel, Inc., 837 S.W.2d 217, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ). The Kizers failed to make an offer of proof regarding the excluded audio portion of the videotape. Thus, this point of error is waived. Accordingly, we overrule Kris's first point of error.

### Factual Sufficiency of the Evidence

Kris next argues that the trial court erred by denying him a new trial on the issue of Chubb Lloyds's contract liability because the jury finding that the fire was set by, or with the participation of, Kris was contrary to the overwhelming weight and preponderance of the evidence, or alternatively, there was insufficient evidence to support the finding. The burden of proof to support the affirmative defense of arson in a fire insurance claim rests with the insurer. See State Farm Lloyds, Inc. v. Polasek, 847

S.W.2d 279, 283 (Tex.App.—San Antonio 1992, writ denied); *Bufkin v. Texas Farm Bureau Mut. Ins. Co.*, 658 S.W.2d 317, 320 (Tex.App.—Tyler 1983, no writ); *Texas Gen. Indem. Co. v. Speakman*, 736 S.W.2d 874, 880 (Tex.App.—Dallas 1987, no writ). Thus, this point is a challenge to the factual sufficiency of the evidence to support the jury's finding.[1] *See Gooch v. American Sling Co.*, 902 S.W.2d 181, 184 (Tex.App.—Fort Worth 1995, no writ).

■ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

■ Some evidence indicated that Kris was responsible for starting the fire. Kris testified that he was the last to leave the house before the fire. He further testified that he left the house with the security system turned off. Additionally, Terrie took her dog to work with her that morning. Both Terrie and Kris testified that only they and their son had keys to the house. Various firefighters testified that the front door was locked when they arrived, that it was necessary to break into both the front gate and the door to fight the fire, and the house was a secured, locked residence before their entry. Moreover, Kris's testimony indicated that before the fire, the Kizers were experiencing financial difficulties. Expert testimony from a certified public accountant who had reviewed various financial documents of

the Kizers also indicated that the Kizers were suffering financial difficulties. At the time of the fire, Kris owed at least $300,000 in judgments and had a bank debt of approximately $300,000 to $400,000.

Moreover, there was significant testimony that the fire was intentionally and deliberately set. Lieutenant Francis Fry of the Flower Mound Fire Department testified that the presence of black sooty smoke, the degree of destruction in the room, the intensity of the heat, the presence of 90 degree burns in the carpet, the burn patterns themselves, spalling[2] in the concrete, and the fact that cats were locked in the pool room away from the fire and had asphyxiated, all indicated to him that the fire was intentionally set. In response to a question regarding whether in his opinion the fire was a random act, he stated:

> No sir. It was an incendiary fire. Based on the evidence that I've collected and the investigation that I've done, yes, sir, it's an incendiary fire. Somebody deliberately set the fire.

He further testified that he was able to rule out the possibility that the fire was an accidental electrical fire. Moreover, Elliot Metzger, who was chief of the Flower Mound Fire Department at the time of the fire, testified that he agreed with Lieutenant Fry's conclusions. Kenneth Shuemake, Chubb Lloyds's fire and cause origin expert, also testified that, in his opinion, the fire was intentionally set. He stated that the fire had at least three separate points of origin and had "all the earmarks" of an intentionally set fire. Two different lab reports indicated that two different debris samples tested positive for kerosene.

Therefore, we cannot say that the evidence supporting the jury's finding that the fire

---

1. When the party without the burden of proof on a fact issue complains of the adverse fact finding, that party should phrase his point of error as "insufficient evidence" to support the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When the party having the burden of proof on a fact issue appeals from an adverse fact finding, the point of error challenging the factual sufficiency of the evidence should be that

the finding was "against the great weight and preponderance of the evidence." *Id.*

2. Lieutenant Fry testified that a spall mark is like a small crater in concrete where it has gotten extremely hot and a spot has blown out indicating the possibility that accelerants or flammable liquids were present.

was intentionally set by, or with the participation of, Kris is so weak or the evidence to the contrary is so overwhelming that it should be set aside. Consequently, we overrule Kris's second point of error.

### Chubb Lloyds's Complaint

*Innocent Spouse's Recovery for Community Property*

We next turn to Chubb Lloyds's claim that the trial court erred by permitting Terrie any recovery for her half of the house's contents after a jury finding that the fire was set by, or with the participation of, Kris because the property was community property and any payment by the carrier would be community property and would benefit the guilty spouse. Because this issue is a question of law, we review it de novo. *See Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex.1995); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996, writ filed). A de novo review is less deferential than an abuse of discretion review. *See id.* A trial court has no discretion to decide what the law is or to properly apply it. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding); *Kessler*, 932 S.W.2d at 735.

The trial court awarded Terrie $87,-000 for one-half of the contents coverage of the insurance policy, $34,800 in attorneys' fees, and prejudgment interest. The Kizers have never asserted that the personal property lost in the fire was not community property. In Texas, property possessed by either spouse during the marriage is presumed to be community property absent clear and convincing evidence to the contrary. *See* TEX. FAM.CODE ANN. § 5.02 (Vernon 1993).

The Texas Supreme Court has not determined whether an innocent spouse may recover a "share" of community property destroyed by a fire that the other spouse is found responsible for starting. Until 1986, Texas appellate courts considered co-insureds barred from recovering insurance proceeds when one of the co-insureds deliberately destroyed jointly-owned property. *See Western Fire Ins. Co. v. Sanchez*, 671 S.W.2d 666, 669–70 (Tex.App.—Tyler 1984, writ ref'd n.r.e.); *Bridges v. Commercial Standard Ins. Co.*, 252 S.W.2d 511, 512–13 (Tex.Civ.App.—Eastland 1952, no writ); *Jones v. Fidelity & Guar. Ins. Corp.*, 250 S.W.2d 281, 283 (Tex.Civ.App.—Waco 1952, writ ref'd). However in *Kulubis*, the Texas Supreme Court modified this rule by allowing an innocent spouse to recover insurance proceeds for separate property. 706 S.W.2d at 955.

But, the *Kulubis* court expressly declined to address the question of community property:

> Texas courts are faced with an additional problem in this situation because we are a community property state. It is not necessary for us to address that particular problem at this time inasmuch as the mobile home in question was ... separate property.... We are not to be understood as holding that an innocent spouse is barred from recovering under an insurance policy covering community property. We do not have that fact situation before us and therefore do not address the problem of how to compensate the innocent spouse and yet not permit benefit to the wrongdoing spouse. That problem will be addressed when and if it is presented to us.

*See id.* The *Kulubis* court discussed five policy considerations in reaching its decision.

- Preventing a wrongdoer from benefitting from wrongdoing

- Meeting the reasonable expectations of an innocent co-insured

- Preventing fraud on the insurance company

- Preventing the insurance company's unjust enrichment

- Refusing to impute the criminal acts of a wrongdoer to an innocent victim

*Id.*

Texas community property law is problematic in these circumstances. Gener-

ally, fire insurance proceeds simply take the place of the destroyed property covered by the policy. *See Swayne v. Chase,* 88 Tex. 218, 30 S.W. 1049, 1051–52 (1895); *Bridges,* 252 S.W.2d at 512–13. Thus, any payment of insurance proceeds under a policy issued to the community, providing coverage for community property, and paid for by community assets,[3] can only be characterized as community property. *See id.* Accordingly, if an innocent spouse is paid a "share" for destroyed community property, absent any severance of the estate, that payment itself must be characterized as community property in which the guilty spouse necessarily has an interest.

Since the *Kulubis* decision, the Amarillo Court of Appeals is the only state appellate court to address this issue. *See Wolfe,* 838 S.W.2d at 712–13. In *Wolfe,* the court allowed the innocent spouse recovery for her portion of the community property at issue. However, the court relied strongly on the fact that before the innocent spouse had established her claim, the community property had been converted to separate property by divorce. *Id.* at 712. The Amarillo court determined this despite the fact that the property was community property at the time the policy was issued, at the time of the fire, and at the time the loss claim was filed and denied. *See id.* We are unpersuaded by this reasoning.

The Fifth Circuit Court of Appeals has addressed this issue, applying Texas law, in two cases since the *Kulubis* decision. *See Webster,* 953 F.2d 222; *Norman,* 804 F.2d at 1365. In *Norman,* which was issued only a few months after *Kulubis,* the court stated,

> We conclude that it would be a strange rule indeed that guaranteed the would-be arsonist a minimum of one-half of the insured value of his building—paid in cash and as community property—even were he found guilty of the act, so long as he arranged matters so that the insurance company could not prove that he had let

his spouse in on his scheme. That would be the apparent result were we to engraft the *Kulubris* [sic] separate-property rule on the community property case presented today, and we therefore decline to do so.

*Norman,* 804 F.2d at 1366. The court held likewise in *Webster* even though the parties were divorced. *Webster,* 953 F.2d at 223–24.

In light of Texas community property law, we find the reasoning of the Fifth Circuit persuasive. To the best of this court's knowledge, the Kizers have been married at all times pertinent to this case, and remain so. Absent a severance of the Kizers' community estate, Terrie cannot recover for community property without benefitting Kris. Although the result may appear harsh, preventing a wrongdoer from benefitting from his wrongdoing must be an overriding policy concern. Accordingly, we hold that a finding that community property was destroyed by a fire intentionally set by, or with the participation of, one spouse bars any recovery by the other spouse, innocent or otherwise. We sustain Chubb Lloyds's point of error and reverse the trial court's judgment awarding Terrie $87,000, representing one-half of the contents coverage of the insurance policy, and prejudgment interest.

## TERRIE'S COMPLAINT

### Co-Insured's Recovery of Insurable Interest

In a single point of error, Terrie asserts that the trial court erred by failing to award her recovery to the full extent of her insurable interest in the insured property. She argues that she should be entitled to recover "her share" of both the contents in the house and the structure. She first contends that her testimony that she transferred "her interests" in the house could only have affected her interest in the equity at that time because she could not have transferred any interest encumbered by the mortgage. Thus, she contends that the house should be

---

**3.** The personal earnings of either spouse during marriage are characterized as community prop-

erty. *Keller v. Keller,* 135 Tex. 260, 141 S.W.2d 308, 311 (1940).

characterized as a mixed asset, owned in part by Kris separately and owned in part by the community. She does not argue that any part of the house was owned by her separately. Thus, any interest not transferred to Kris is presumed community property. *See* TEX.FAM.CODE ANN. § 5.02 (Vernon 1993). Because we have just held that an innocent spouse may not recover for community property destroyed by fire set by, or with the participation of, the other spouse, we need not consider this argument further.

Terrie further argues that she is entitled to recover for her "insurable interest" in the house. She cites *Smith v. Eagle Star Ins. Co.,* 370 S.W.2d 448 (Tex.1963), for the proposition that a person has an insurable interest in property when that person "derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction." *Id.* at 450. Under this theory of recovery, an insured need not have title, a property interest, a lien on, or even possession of the property in question. *See id.*

 However, we hold that Terrie has not properly preserved error regarding her right to recover under this theory. An appellant is limited to the theories on which the case was tried and may not appeal the case on new or different theories. *See Pratt v. City of Denton,* 670 S.W.2d 786, 789 (Tex.App.—Fort Worth 1984, no writ). A point not raised by pleadings, by a motion for new trial, or otherwise presented to the trial court may not be raised on appeal. *See Greater Fort Worth & Tarrant County Community Action Agency v. Mims,* 627 S.W.2d 149, 151 (Tex.1982). This theory of recovery is not supported by the pleadings. The pleadings gave no notice that the Kizers might seek to alter the effect of their property conveyance for this trial. Also, no evidence was introduced on this issue. Moreover, the jury was not charged on this theory. None of the jury questions asked about the extent of Terrie's insurable interest, if any, in the house. Additionally, she did not preserve the issue in a motion for new trial. Terrie did not file a motion for new trial. Because this argument may not be raised for the first time on appeal, we hold that it is waived.

Thus, the trial court properly entered judgment awarding the Kizers no recovery for the loss of the house. Terrie's sole point of error is overruled. Because we hold that the trial court erred as a matter of law by awarding Terrie $87,000, representing one-half of the contents coverage of the insurance policy, and pre-judgment interest, and because we overrule her sole point of error, we also reverse the trial court's order awarding her $34,800 in attorneys' fees. Accordingly, we render judgment that Terrie take nothing against Chubb Lloyds.

## CONCLUSION

In summary, Kris's point of error concerning the admission of the videotape is waived because he made no offer of proof. Additionally, we cannot say that the finding that the Kizer home was burned by, or with the participation of, Kris is supported by evidence so weak, or the evidence to the contrary is so overwhelming, that it should be set aside. This finding is supported by factually sufficient evidence. Moreover, as a matter of law, Terrie may not recover anything for the contents of the house, or for any part of the house not owned separately by Kris, because that property is community property and any recovery for community property would benefit Kris. Further, the issue of Terrie recovering on the house because of any "insurable interest" she may have cannot be raised for the first time on appeal. Accordingly, we reverse the trial court's judgment awarding Terrie $87,000 recovery for her "share" of the contents of the house, prejudgment interest, and $34,800 in attorneys' fees, and we render judgment that Terrie take nothing against Chubb Lloyds.