**Robert R. MURPHY and Daisy Murphy, Appellants,**

v.

**TEXAS FARMERS INSURANCE COMPANY, Appellee.**

No. 01–97–00100–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 1, 1998.

Rehearing Overruled May 27, 1998.

Tom F. Coleman, Houston, for Appellants.

William J. Boyce, Stephen Pate, Houston, for Appellee.

Before SCHNEIDER, C.J., and HEDGES and NUCHIA, JJ.

## OPINION

NUCHIA, Justice.

Appellants Robert and Daisy Murphy sued appellee Texas Farmers Insurance Company (Farmers) for insurance proceeds under their homeowner's policy after their home burned down. The trial court rendered a take-nothing judgment against both Robert and Daisy Murphy. We affirm in part, reverse in part, and render.

## BACKGROUND

In 1986, appellant Robert Murphy purchased the home that he, his wife, and three children lived in. In November of 1991, the property was reconveyed to add his wife on the note and deed of trust. In September 23, 1993, Robert Murphy obtained homeowner's insurance with Farmers. Seven days later the Murphy home was ransacked and intentionally burned down. Robert Murphy submitted a proof of loss, claiming $115,000 for damage to the structure and $69,000 for damage to personal property.

Farmers investigated the claim, and in February 1994, filed a declaratory judgment action seeking a declaration that it need not pay on the insurance policy because Robert Murphy had set or had caused the fire to be set. On April 11, 1994, Robert Murphy filed his original answer as well as a counter-claim seeking to recover the proceeds of the insurance policy. Daisy Murphy had separated from Robert Murphy; because the pleadings did not implicate her, she filed her intervention in December of 1995, seeking to recover her interest in the benefits payable. In February of 1996, Daisy Murphy filed for divorce, and on March 8, 1996, she and Robert Murphy executed a partition agreement to separate the community interests in the proceeds. The agreement provided that an undivided one-half interest in claims against Farmers be "partitioned and executed to Daisy Murphy to be her separate property, together with any and all insurance policies pertaining to that claim."

After the trial held on March 12–14, 1996, the jury found that Robert Murphy had intentionally set the fire. The jury also found, however, that Daisy Murphy was an innocent spouse "who did not have prior knowledge of or participate in the other spouse's setting or caused to be set the fire in question." The jury also found that she did find out about her husband's act after the fire. On October 11, 1996, the Murphys' divorce became final, and the decree of divorce was filed in the trial court. On October 17, 1996, the trial court rendered a take-nothing judgment against both Robert and Daisy Murphy.

Appellants raise five points of error.

## DISCUSSION

### Daisy Murphy

In four points of error, Daisy Murphy contends that the trial court erred in rendering a take-nothing judgment against her. In point of error one, Daisy Murphy contends that the trial court erred in rendering the take-nothing judgment because the jury found that she was an "innocent spouse." In point of error two, she contends that the trial court erred in rendering the take-nothing judgment because the jury's finding that she had knowledge of the intentional nature of the fire, after the fact, is immaterial. In point of error three and four, she attacks the legal and factual sufficiency of the evidence to support the jury's finding that she had knowledge of the intentional nature of the fire, after the fact.

■ Daisy Murphy argues in her first point of error that the finding that she was an "innocent spouse" precluded the trial court from rendering a take-nothing judgment under the facts of this case. Because this issue is a question of law, we review it de novo. *Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex.1995).

Before the Texas Supreme Court's pronouncement in *Kulubis v. Texas Farm Bureau Underwriters Insurance Co.*, 706 S.W.2d 953 (Tex.1986), Texas followed the rule that the illegal acts of a co-insured prevented recovery by any other co-insured. *See, e.g., Jones v. Fidelity & Guar. Ins. Co.*, 250 S.W.2d 281 (Tex.Civ.App.—Waco 1952, writ ref'd). This rule was "grounded in the public policy concept that *a wrongdoer* must not, to any extent or in any manner, benefit

from *his wrongful acts."* *Kulubis v. Texas Farm Bureau Underwriters Ins. Co.,* 699 S.W.2d 287, 290 (Tex.App.—Austin 1985), *rev'd,* 706 S.W.2d 953 (Tex.1986) (emphasis in original). The supreme court pointed out that at the time Texas adopted this rule, it was in the majority; however, it has since fallen in disrepute to a new majority rule that looks to the reasonable expectations of an innocent co-insured. *Kulubis,* 706 S.W.2d at 954–55.

Thus, the *Kulubis* court disposed of the old rule:

We hold the more enlightened reasoning dictates that the illegal destruction of jointly owned property by one co-insured shall not bar recovery under an insurance policy by an innocent co-insured. A trial court is uniquely situated to make the determination of the co-insured's innocence, and, **unless there is a finding of lack of innocence, the coinsured shall be permitted to recover.**

*Id.* (emphasis added). In adopting this new rule, the court pointed out the following policy considerations that trial courts must weigh in deciding whether a co-insured may recover: (1) preventing a wrongdoer from benefitting from his wrongdoing; (2) meeting the reasonable expectations of an innocent co-insured; (3) prevention of fraud upon the insurance company; (4) prevention of unjust enrichment by the insurance company; and (5) refusal to impute the criminal acts of the wrongdoer to an innocent victim. *Id.* at 955; *see also Chubb Lloyds Ins. Co. v. Kizer,* 943 S.W.2d 946, 951 (Tex.App.—Fort Worth 1997, writ denied) (citing *Kulubis* ). In essence, the court must weigh the old policy of ensuring the wrongdoer does not benefit against the new policy of ensuring that the innocent co-insured is not injured to the insurance company's benefit.

An additional problem occurs, however, when the jointly-owned, co-insured property is community property. In *Kulubis,* one co-insured burned down the family mobile home. Because the mobile home had been given to the couple as a gift, each spouse owned an undivided one-half interest as separate property. The court noted that in this situation, the wrongdoer does not benefit be-

cause the co-insured owns half of the mobile home separately. Therefore, the wrongdoer is not entitled to any of the proceeds.

The court recognized an inherent problem where the insured property is community property; the wrongdoer would generally be entitled to a portion of the proceeds, and thus, would benefit from his wrongdoing. However, the court reserved that issue for another day:

We are not to be understood as holding that an innocent spouse is barred from recovering under an insurance policy covering community property. We do not have that fact situation before us and therefore do not address the problem of how to compensate the innocent spouse and yet not permit benefit to the wrongdoing spouse. That problem will be addressed when and if it is presented to us.

*Id.* Since *Kulubis,* there have been only a handful of cases that attempt to address this problem. *Kizer,* 943 S.W.2d at 951–52; *Saunders v. Commonwealth Lloyd's Ins. Co.,* 928 S.W.2d 322, 324–25 (Tex.App.—San Antonio 1996, no writ); *Travelers Companies v. Wolfe,* 838 S.W.2d 708 (Tex.App.—Amarillo 1992, no writ); *Webster v. State Farm Fire Cas. Co.,* 953 F.2d 222 (5th Cir.1992); *Norman v. State Farm Fire & Cas.* Co., 804 F.2d 1365 (5th Cir.1986).

Shortly after the decision in *Kulubis,* the Fifth Circuit Court of Appeals handed down the decision in *Norman.* As in all of the cases, jointly owned property was intentionally burned down by one of the co-insureds. In *Norman,* the innocent spouse apparently had separated from the guilty spouse and had filed for divorce, but the divorce was not final. *Norman,* 804 F.2d at 1365. The court started its analysis by failing to include one of the policy considerations provided by *Kulubis, i.e.,* meeting the reasonable expectations of an innocent co-insured. *Id.* at 1366. It then, *sua sponte,* decided that denying the wrongdoer a benefit was the single most important consideration, and stated, "It seems patent, although the *Kulubis* court does not say so, that the first of these considerations is by far the dominant one." *Id.* In essence, the court resorted to the old rule, and without looking at any of the other fac-

tors, the court denied the innocent spouse any recovery because there was a possibility that the guilty co-insured might benefit. *Id.*

The court did point out that there might be judicial initiatives that would have prevented this result. *Id.* For example, the court offered the suggestion that:

> the deliberate destruction of community property by one spouse works, in and of itself, a partition of the spouses' interests in the property so that the other spouse, if innocent of complicity, could recover insurance proceeds on his or her half. Others can [also] be imagined. [ ... ] We also recognize that developments after the fact of destruction—developments such as a divorce and property allocation—may so bring matters about that the culpable spouse receives no benefit from his act of arson.

*Id.* The court declined to exercise this rule to protect the innocent spouse by stating: "We are not the custodians of Texas's community property law, however; and even were we to conclude that such a rule would be a wise measure, confecting it would be an improper exercise for us." *Id.*

In *Webster*, the Fifth Circuit once again visited the issue. The family home was intentionally burned by Guy Webster. Guy and Etta Webster filed a joint claim for the insurance proceeds, which was denied by State Farm. *Webster*, 953 F.2d at 223. Later, the Websters received a divorce that separated their claim on the proceeds. *Id.* At trial, Etta Webster, the innocent spouse, argued that State Farm had breached its

contract because the proceeds were now separate. *Id.* The Fifth Circuit affirmed the trial court's rendition of a take-nothing judgment, not by addressing the *Kulubis* factors, but instead, by resorting to the old *Jones* rationale. *Id.* The court determined that at all times pertinent to State Farm's decision to deny recovery, *i.e.*, the date the policy was issued, the date of the fire, the date the Websters filed their claim, and the date the claim was refused, the insured property was community. *Id.* The Fifth Circuit reasoned that even though the property was separate by the time of trial, State Farm did not breach its contract with Etta Webster because the wrongdoer would have benefitted if State Farm had paid the proceeds to her.[1]

In *Wolfe*, the family business was intentionally destroyed by Ralph Wolfe. *Wolfe*, 838 S.W.2d at 710. Before trial, the Wolfes obtained a divorce that separated their interests in the insurance proceeds. *Id.* The court criticized the *Norman* and *Webster* decisions' failure to apply the Texas Supreme Court's opinion in *Kulubis*. *Id.* at 711–12. The court held that because the Wolfes were divorced, and the property was separate, the wrongdoer would not benefit from his wrongdoing. The *Wolfe* court awarded the innocent spouse her share of the insurance proceeds. *Id.* at 712–13.

In *Saunders*, the innocent spouse sued the insurance company for bad faith for events that occurred before the *Wolfe* court rendered its decision. *Saunders*, 928 S.W.2d at 325. After the *Wolfe* decision was rendered, the insurance company paid the proceeds to

1. *Id.* The Fifth Circuit did not cite any authority for this proposition, and this logic overtly conflicts with the opinion in *Norman* where the Fifth Circuit conceded that "developments after the fact of destruction—developments such as a divorce and property allocation—may so bring matters about that the culpable spouse receives no benefit from his act of arson." *Norman*, 804 F.2d at 1366. Based upon the *Webster* rationale, an innocent spouse would virtually never recover if the property at question was community in nature. We do not think that our supreme court intended to limit its holding in *Kulubis* so narrowly, as the plain language of that case indicates. *Kulubis*, 706 S.W.2d at 955 ("We are not to be understood as holding that an innocent spouse is barred from recovering under an insurance policy covering community property.");

*Wolfe*, 838 S.W.2d at 712 (applying *Kulubis* and holding that the "relevant time" analysis of *Webster* is not applicable because innocent spouse would be exonerated at trial). Assuming, *arguendo*, that these time frames were somehow relevant in conducting our inquiry on a breach of contract action brought by an innocent spouse, they would not change the result in this case. This case was brought by Farmers under the Texas Declaratory Judgments Act to determine its liability under the insurance policy to Robert Murphy, and Daisy Murphy intervened into that suit. Therefore, the question for the Court, at the time of judgment, was whether Farmers should pay Daisy Murphy under the policy, not whether Farmers breached its insurance contract.

the innocent spouse. *Id.* The court held that because the *Norman* and *Webster* decisions existed, and *Wolfe* had not yet been rendered, the insurance company did not originally deny coverage in bad faith. *Id.*

In *Kizer*, the family residence was intentionally burned by Kris Kizer. *Kizer*, 943 S.W.2d at 949. Terrie Kizer, the innocent spouse, remained married to her husband throughout the litigation, and there was no attempt to partition or separate their interests in the insurance proceeds. *Id.* at 952. Nonetheless, Terrie Kizer requested her share of the proceeds. *Id.* at 951. The court relied on *Norman* and *Webster* and held that the innocent spouse could not recover because the wrongdoer might benefit. *Id.* at 952. Curiously, the court found it necessary to cursorily disapprove of the *Wolfe* decision, notwithstanding that in *Wolfe* the innocent spouse had obtained a divorce, and her husband could not benefit from any recovery. As stated *supra*, there was no attempt to separate the community property in *Kizer*, and the wrongdoer would clearly benefit from his wrongful act.

In this case, Daisy Murphy and Robert Murphy had executed a partition agreement that separated the parties' interests in any insurance proceeds before the trial occurred. This presents a situation like that in *Kulubis* where the guilty spouse has no legal right to her recovery.

Relying on the guidance of the Texas Supreme Court's opinion in *Kulubis*, we see no reason why Daisy Murphy should be pre-

vented from recovery. Farmers did not receive "a finding of lack of innocence"; [2] to the contrary, Daisy Murphy was found to be innocent.[3] Recovery by Daisy Murphy will not cause a fraud on Farmers; will ensure that Farmers will not be unjustly enriched to Daisy Murphy's detriment; and will ensure that her reasonable expectations, as an innocent co-insured, will be met. Furthermore, like in *Wolfe*, there is no concern about benefitting the wrongdoer due to the community property issue; there was a specific partition of the community property before trial. This is even consistent with the Fifth Circuit's suggestion in *Norman*, *i.e.*, that developments after the fact of destruction—such as a divorce and property allocation—may so bring matters about that the culpable spouse receives no benefit from his act of arson.[4] Robert Murphy will receive no benefit in this case. Therefore, Daisy Murphy should recover.

We sustain Daisy Murphy's first point of error. Because this point is dispositive of Daisy Murphy's appeal, we do not address her remaining points.

### Robert Murphy

In his sole point of error, Robert Murphy contends that the evidence was legally and factually insufficient to support the jury's finding that he intentionally burned down his house. It is undisputed that the fire was intentionally set; however, Robert Murphy argues that there was insufficient evidence to find that he had the motive or opportunity to set the fire.

---

2. *Kulubis*, 706 S.W.2d at 954–55 ("unless there is a finding of lack of innocence, the co-insured shall be permitted to recover.").

3. Farmers argues, and apparently the trial court found, that Daisy Murphy's knowledge of her husband's wrongdoing *after the fire*, somehow should prevent her recovery. This is not persuasive. Many times a person will have the misfortune of learning that his or her spouse has intentionally destroyed property. *See, e.g.*, *Kulubis*, 706 S.W.2d at 953 (wife filed for divorce, husband burned down mobile home and unsuccessfully attempted suicide). Absent some finding by the jury that Daisy Murphy was complicit in the fraud that her husband had attempted, this finding does not bear upon her recovery.

4. The suggestion of the Fifth Circuit that an automatic partition should occur due to the

guilty party's wrongful act rings true. It seems patently unfair to permit recovery where a party has had the emotional and mental fortitude, after their family home has been intentionally burned down by their own spouse, to hire an attorney knowledgeable in this area to draft a partition agreement, yet deny recovery to an equally innocent spouse, as occurred in *Kizer* or *Webster*. As an intermediate court of appeals, however, this judicial initiative is properly left to the Texas Supreme Court. *See, e.g.*, *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1988, writ denied) ("an intermediate court is duty-bound to follow the Texas Supreme Court's authoritative expressions of the law and to leave changes in the application of common law rules to that court.").

To establish arson as a defense to a civil suit for insurance proceeds, the insurance company must show by a preponderance of the evidence that the insured set the fire or caused the fire to be set. *Blankenship v. St. Paul Guardian Ins. Co.*, 911 S.W.2d 95, 96 (Tex.App.—Texarkana 1995, no writ); *State Farm Lloyds Inc. v. Polasek*, 847 S.W.2d 279, 282 (Tex.App.—San Antonio 1992, writ denied); *St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d 614, 622 (Tex. App.—Tyler 1990, no writ.). The burden of proof to support the affirmative defense of arson in a fire insurance claim rests with the insurer. *Polasek*, 847 S.W.2d at 283; *Texas Gen. Indem. Co. v. Speakman*, 736 S.W.2d 874, 880 (Tex.App.—Dallas 1987, no writ); *Bufkin v. Texas Farm Bureau Mut. Ins. Co.*, 658 S.W.2d 317, 320 (Tex.App.—Tyler 1983, no writ). However, its burden of proof at trial was not to show by an absolute certainty, but rather, by a preponderance of the evidence that the insured intentionally set the fire. *Bufkin*, 658 S.W.2d at 320; *Payne v. Hartford Fire Ins. Co.*, 409 S.W.2d 591, 595 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.). Arson may be proved by circumstantial evidence because it is ordinarily conceived and executed in secrecy. *Luker*, 801 S.W.2d at 622; *Garrett v. Standard Fire Ins. Co.*, 541 S.W.2d 635, 637 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *Payne*, 409 S.W.2d at 595. Ordinarily the circumstantial proof that the insured committed arson consists of evidence that the fire had an incendiary origin and that the insured had an opportunity and a motive to set it. *Polasek*, 847 S.W.2d at 283.

## Legal Sufficiency

In reviewing a "no evidence" point, we consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex.App.—Houston [1st Dist.] 1993, writ denied). If there is any evidence of probative force to support the finding, *i.e.*, more than a mere scintilla, we will overrule the point. *Id.* When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970). However, if the evidence supplies some reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is some evidence. *Kindred*, 650 S.W.2d at 63.

Regarding Robert Murphy's motive in setting the fire, the jury heard that he had not had consistent income between 1990 and 1993, that he had been repeatedly tardy on his mortgage payments, that his mortgagee had initiated foreclosure proceedings, and that he had filed for bankruptcy to stop the foreclosure. The jury also heard that in Robert Murphy's bankruptcy, creditors had filed claims of almost $20,000. There was also evidence that Robert Murphy had filed an inflated proof of loss statement to Farmers. Daisy Murphy testified that she had been fired from her job in late 1992, remained unemployed until the time of trial, and was not receiving unemployment compensation. Daisy Murphy also testified that she had to pay a financial penalty to withdraw $19,000 from her 401(k) plan to pay debts.

With regard to opportunity, the jury heard that neither Robert Murphy nor his wife and children were at home the night of the fire. Robert Murphy also provided inconsistent stories about when he returned home the night of the fire, claimed the Farmers's adjuster had lied about what he had said, and did not provide any witnesses to support where he was. Johnny Thornton, a fire expert, also testified that there was no evidence that this was a vandalistic fire, and that the evidence indicated to him that it was a fire associated with fraud or burglary. He also testified that there were indications that someone made it look like a burglary; items and furniture had been moved around but not taken. Additionally, some guns as well as a television were not taken.

This evidence was legally sufficient as to Robert Murphy's motive and opportunity. Accordingly, the evidence was legally suffi-

cient to support the jury's finding that Robert Murphy intentionally set the fire.

### Factual Sufficiency

In reviewing factual sufficiency points of error, we must examine all of the evidence in the record, including any evidence contrary to the judgment to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Plas–Tex. Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989).

As to motive, the jury heard that he had obtained the Farmers's policy on direction from his bankruptcy attorney, because the trustee had said that his bankruptcy plan was incomplete. Robert Murphy also testified that he had trouble obtaining insurance on the home due to it being located in a high crime area. The jury heard that he only owed two or three payments on his house and that the mortgagee had filed the foreclosure merely to get him to pay the arrearage. Robert Murphy testified that he was unaware that the mortgagee had posted the property for foreclosure or that his bankruptcy had been dismissed.

The jury also heard that the Houston Fire Marshall did not consider Robert Murphy a suspect and had noted that on the night of the fire, he was very distraught. Murphy testified that he was a pastor who had crusaded against drugs, and that a local gang had made vandalistic threats and had fired a gun at his church.

As to opportunity, Robert Murphy put on evidence that he had gone to a revival the night of the fire, and had afterwards gone to a Denny's until at least 1:30 a.m, and possibly as late as 2 a.m. He also testified that none of his family was home the night of the fire and that there were no witnesses to how the fire occurred. The jury also heard that before his wife left for Shreveport, she did not remove any of her possessions, save enough clothing for the trip.

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Transmission Exchange Inc. v. Long*, 821 S.W.2d 265, 271 (Tex.

App.—Houston [1st Dist.] 1991, writ denied); *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The jury is free to believe or disbelieve the witnesses' testimony in whole or in part. *Miller v. Kendall*, 804 S.W.2d 933, 939 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Brannon*, 682 S.W.2d at 680. The jury is entitled to disbelieve a witness even though that witness is neither impeached nor contradicted. *Blankenship*, 911 S.W.2d at 99.

Based upon the evidence provided at trial, we cannot say that the evidence supporting the jury's finding that the fire was intentionally set by, or with the participation of, Robert Murphy is so weak or the evidence to the contrary is so overwhelming that it should be set aside. Consequently, we overrule Robert Murphy's sole point of error.

We reverse the judgment of the trial court that Daisy Murphy take nothing and render judgment that Daisy Murphy take half of the amount the jury awarded for the Murphys' loss, *i.e.*, $84,748.86, as well as attorney's fees, as the jury found, in the amount of $25,424.58.

We also render judgment that Daisy Murphy is entitled to prejudgment interest, from the date of the partition agreement, as well as postjudgment interest, as provided by law. We affirm the trial court's judgment that Robert Murphy take nothing.