**Affirmed as Modified and Memorandum Opinion filed June 17, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00124-CV

---

### AMERICAN RISK INSURANCE COMPANY, INC., Appellant

### V.

### AHMAD ABOUSWAY AND IBRAHIM ABOUSWAY, Appellees

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2011-37143

## M E M O R A N D U M   O P I N I O N

This is an appeal from a judgment awarded to homeowners Ahmad and Ibrahim Abousway, who submitted a claim for loss of property following a fire. The appellant insurance company challenges the sufficiency of the evidence to support the trial court's judgment and findings of fact and conclusions of law. We affirm.

## BACKGROUND

Ahmad and Ibrahim Abousway had a homeowner insurance policy with American Risk Insurance Company, Inc., insuring a home the two brothers bought together in early 2008. The policy included coverage for fire loss. Following a 2010 fire that rendered the home uninhabitable, the Abousways submitted a claim for losses under the policy. American Risk hired a fire expert to investigate the fire. Based on his findings, American Risk refused payment of the claim until further investigation had concluded.

The Abousways sued American Risk, asserting claims for breach of contract and violations of chapters 541 and 542 of the Texas Insurance Code. American Risk answered the suit, asserting that the fire was an act of arson, thereby voiding the policy. The case was tried to the bench.

On October 22, 2012, the trial court signed a final judgment in favor of the Abousways, finding that American Risk was liable for breach of contract and for violating provisions of chapters 541 and 542 of the Texas Insurance Code. As a result of American Risk's breach of contract, the trial court awarded the Abousways $200,000 in insurance benefits for the structure, $37,317.61 in benefits for lost personal property, and $72,509.88 in statutory penalties. In addition, the trial court awarded the Abousways attorney's fees of $115,537.89 under chapter 541 of the Texas Insurance Code.

The trial court filed amended findings of fact and conclusions of law on February 6, 2013, but did not include a finding on American Risk's affirmative defense of arson by the insureds. American Risk appeals the trial court's judgment.

## ISSUES AND ANALYSIS

In eleven issues, American Risk asserts that the evidence is legally and

factually insufficient to support the trial court's amended findings of fact and conclusions of law.

## A. Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *Id.* We may not substitute our judgment for that of the trier-of-fact, so long as the evidence enables reasonable and fair-minded people to differ in their conclusions. *Id.* at 822.

To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## B. Legal and factual sufficiency of the evidence regarding arson

In its first four issues, American Risk challenges the legal and factual sufficiency of the evidence to support the trial court's implied finding of no arson by the insured.[1] Arson is an affirmative defense to a civil suit for insurance proceeds from a loss resulting from a fire. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 45 n.1 (Tex. 1998). To establish arson as a defense, the insurer must show by a preponderance of the evidence that the insured set the fire or caused the fire to be set. *Murphy v. Tex. Farmers Ins. Co.*, 982 S.W.2d 79, 84 (Tex. App.—Houston [1st Dist.] 1998), *aff'd on other grounds*, 996 S.W.2d 873 (Tex. 1999). Often, parties attempt to prove arson by circumstantial evidence that the fire had an incendiary origin and that the insured had an opportunity and motive to set it. *Id*.

According to American Risk, the evidence conclusively established that arson by the insured voided its contractual and statutory obligations to the Abousways, and the court's judgment was so contrary to the weight and preponderance of the evidence that it was clearly wrong and manifestly unjust.[2]

---

[1] The trial court did not enter a finding of fact regarding American Risk's affirmative defense of arson by the insureds. Both sides agree that the trial court's judgment for the Abousways required a rejection of American Risk's affirmative defense and, therefore, the finding of no arson should be implied. In accordance with the parties' briefing, we analyze the legal and factual sufficiency of the evidence to support the trial court's implied finding.

[2] American Risk asserts in its brief that the Supreme Court of Texas has identified "common indicators" to establish a motive for arson, including evidence that the insured intended to move, a strong alibi by the insured, unusual money problems, the removal of furniture or personal items before the fire, and a financial burden resulting from everyday expenses. *See Simmons*, 963 S.W.2d at 46. Accordingly, American Risk now emphasizes that it demonstrated many of these indicators at trial. American Risk's reliance on these indicators is misplaced. The Supreme Court of Texas never cited these "common indicators of fraud by arson" as conclusive, such that a showing of several factors mandated a finding of arson by the insured. *Id*. Rather, the indicators in *Simmons* were merely a standard set by an insurance company when determining whether to deny coverage. *Id*. at 45–46; *see also Allstate Tex. Lloyds v. Potter*, 30 S.W.3d 658 (Tex. App.—Texarkana 2000, no pet.) (pointing out misplaced reliance

4

American Risk asserts that testimony from Ahmad Abousway demonstrates his motive and opportunity to set the fire. Ahmad testified that, at the time of the fire, he and his brother were behind on several mortgage payments and the electricity to the home had been disconnected for lack of payment. He testified that the house was not being remodeled, and he did not cook anything on the morning of the fire. Ahmad was at a local coffee shop with his dog when he learned of the fire from a neighbor. Although Ahmad testified that their living room had several couches and a large-screen television, the television was not present after the fire. Additionally, Ahmad's father's "Hummer" automobile was parked across the street. The record reflects that there were no signs of forced entry, and Ahmad testified that he locked the door to the house on the morning of the fire.

Furthermore, American Risk contends that evidence from its fire expert and its senior claims examiner established the fire's incendiary origin. Richard Benson, American Risk's cause and origin expert, concluded that the fire was an "incendiary act," evidenced by multiple areas of origin and the possible use of petroleum distillates as accelerants. Benson smelled strange odors in several places that, based on his experience, smelled like charcoal starter fluid or lacquer thinner. Four places in the home were tested for petroleum distillate, and three tests yielded positive results. Benson also testified that he noticed the gas burner knobs on the stove were missing, and he suspected the burners may have been used to help start the fire. When Benson investigated the house, he did not see the large screen television. The record also reflects that pamphlets for prospective tenants for other residences, which American Risk asserts demonstrate the Abousways' plans to move, were found among the fire-damaged remains. Eduardo Schleh, American Risk's senior claims examiner, testified that he thought the results of the

on the so-called *Simmons* indicators).

investigation suggested arson.

Based on our review of the record, however, we conclude that sufficient evidence exists to support the trial court's judgment.

The trial court could have concluded that American Risk failed to prove arson because the fire's origin was not incendiary. Although Benson, in expert testimony, concluded that the fire was an incendiary act, the trial court was not bound by his conclusion because his findings were based more on the lack of evidence for alternative explanations than direct evidence supporting his theory. *Cf. Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807–08 (Tex. 2006) ("The universe of possible causes for the tire failure is simply too large and too uncertain to allow an expert to prove a manufacturing defect merely by the process of elimination."). Eduardo Schleh testified that his conclusions were based on the Benson report, but Schleh was only a fact witness, not an expert witness. *See City of Keller*, 168 S.W.3d at 819 (factfinders may "choose to believe one witness and disbelieve another"). Moreover, the testimony of an interested witness, even if uncontradicted, does no more than raise an issue of fact unless the testimony is clear, direct, positive, and there are no circumstances tending to discredit or impeach such testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Given the uncertain nature of this testimony, the trial court could have concluded that American Risk failed to prove by a preponderance of the evidence that the fire had an incendiary origin.

Alternatively, the trial court could have determined that American Risk failed to prove that the fire was set or caused to be set by the Abousways. On cross-examination, Eduardo Schleh testified that he was not accusing any particular person of causing the fire. In a deposition, Schleh stated he did not have any information or evidence suggesting that the Abousways were involved in

setting the fire, fraudulently concealed information about the fire, or gave false statements about the fire. Similarly, Richard Benson testified that his purpose in investigating the fire was to determine the fire's cause and origin, not to determine who set the fire. Although Benson testified that lab results showed petroleum distillate in three of four areas tested, none of the areas with the positive results actually burned; the only sample taken from an area that actually burned tested negative. The presence of any chemicals was explained by Ahmad, who testified that he stored turpentine and mineral spirits in his garage as part of his flooring business. Ahmad explained that the prospective-tenant pamphlets actually belonged to his girlfriend, who subsequently moved into an apartment. At the time Benson investigated the house, he observed the stove burners in the "off" position, and admitted he did not have any evidence showing the burners were in the "on" position at the time of the fire. Finally, Benson did not investigate the house until seven days after the fire, and admitted he was unsure if anyone else had been in the house.

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence would enable a reasonable and fair-minded factfinder to conclude that American Risk failed to prove by a preponderance of the evidence that the fire was deliberately set or that the Abousways set the fire or caused the fire to be set. Thus, the evidence is legally sufficient to sustain the trial court's verdict. *See City of Keller*, 168 S.W.3d at 827. Furthermore, we hold that the evidence supporting the trial court's implied finding against arson by the Abousways is not so weak or against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07. Accordingly, appellant's issues one through four are overruled.

7

## C. Sufficiency of the evidence to support trial court's award of damages for personal property

In its fifth, sixth, and eleventh issues, American Risk challenges the legal and factual sufficiency of the evidence to support the trial court's award of $37,317.61 for damages to personal property.

The insurance policy between American Risk and the Abousways provides that American Risk's liability for personal property losses is limited to the lesser of the "actual cash value at the time of loss" or the "cost to repair or replace" the property, with "proper deduction for depreciation." American Risk claims that the only evidence offered by the Abousways regarding the value of personal property came from the written report and testimony of Dan Stouffer, a public adjustor. In his written report Stouffer assessed the total loss of personal property at $37,317.61. The accompanying column for "age" next to each listed item was left empty. Stouffer testified that he did not depreciate the value of each item because the Abousways never gave him the age of each item. American Risk asserts that, because Stouffer testified that he did not apply depreciation to his estimates, the underlying data is unreliable, and therefore legally insufficient to sustain the trial court's award of damages. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 713 (Tex. 1997) ("The underlying data should be independently evaluated in determining if the opinion itself is reliable.").

We first must determine whether American Risk's legal sufficiency arguments about the reliability of Stouffer's estimates were preserved for appellate review. In *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, the Supreme Court of Texas stated:

> When the expert's underlying methodology is challenged, the court necessarily looks beyond what the expert said to evaluate the reliability of the expert's opinion. When the testimony is challenged

as conclusory or speculative and therefore non-probative on its face, however, there is no need to go beyond the face of the record to test its reliability. We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis. However, when the challenge is restricted to the face of the record . . . for example, when expert testimony is speculative or conclusory on its face . . . then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.

136 S.W.3d 227, 233 (Tex. 2004). (citations omitted). American Risk does not contend that Stouffer's opinion was speculative or conclusory on its face. American Risk only asserts that Stouffer's report and testimony were unreliable because the underlying data was flawed, i.e., not depreciated.

To preserve this complaint for review, American Risk must have objected at trial to the methodology of Stouffer's estimates so the trial court had an opportunity to conduct its own analysis. *See Coastal*, 136 S.W.3d at 233; *Graves v. Tomlinson*, 329 S.W.3d 128, 146 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The record indicates that American Risk did not make such an objection. Because American Risk did not timely object to Stouffer's valuation methodology before or during trial, it cannot attack his methodology on appeal by way of a legal sufficiency challenge predicated on asserted flaws in his methodology. *See Graves*, 329 S.W.3d at 146. American Risk's complaint regarding the legal sufficiency of Stouffer's estimates of damage to personal property is waived.

Nevertheless, American Risk maintains that the evidence is factually insufficient to support an award of damages for lost personal property and contents. American Risk points to several aspects of Stouffer's testimony which it claims "[make ]clear that there was no evidence regarding the value of the personal property and contents from which the trial court could have made an award." We

will only set aside the trial court's finding on a factual sufficiency challenge if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07. American Risk does not point to any controverting evidence that would weigh against Stouffer's testimony, and our review of the record does not reveal any. Accordingly, we hold that Stouffer's testimony and report constitute factually sufficient evidence to support the trial court's finding of damages for lost personal property.

American Risk's fifth, sixth, and eleventh issues are overruled.

## D. Sufficiency of the evidence to support trial court's award of attorney's fees and statutory penalties

In its seventh through tenth issues, American Risk challenges the legal and factual sufficiency of the evidence to support the amount of the trial court's award of attorney's fees and statutory penalties. A court's decision to grant or deny attorney's fees is reviewed under an abuse-of-discretion standard, while the amount of attorney's fees awarded is reviewed under a legal sufficiency standard. *See EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied). A prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999). The Texas Insurance Code provides that, "A plaintiff who prevails in an action under this subchapter may obtain . . . court costs and reasonable and necessary attorney's fees[.]" Tex. Ins. Code § 541.152. The party seeking to recover attorney's fees under section 541.152 carries the burden of proof. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *Rosenblatt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 318 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

When a party challenges the sufficiency of the evidence supporting an adverse finding on an issue on which it does not have the burden of proof, that party must demonstrate on appeal that there is no evidence to support the adverse finding. *Lundy v. Mason*, 260 S.W.3d 482, 491 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Because we review the amount of attorney's fees awarded under a legal sufficiency review, we must view the evidence in a light most favorable to the finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless a reasonable person could not. *See City of Keller*, 168 S.W.3d at 827.

American Risk first asserts that the award of attorney's fees and statutory penalties are improper because both are based on the total amount awarded under the insurance policy. Because the total amount awarded under the insurance policy includes the trial court's finding of damages for lost personal property, which American Risk argues is based on insufficient evidence, American Risk asserts the attorney's fees and statutory penalties also are unsupported by the evidence at trial. We already have upheld the trial court's finding of damages for lost personal property. Thus, American Risk's first complaint regarding the attorney's fees and statutory penalties is overruled.

Alternatively, American Risk asserts that the trial court's award of attorney's fees is unsupported by sufficient evidence because of an alleged mathematical error by the trial court. The trial court awarded the Abousways a total recovery of $309,827.49. Additionally, the trial court awarded the Abousways $115,537.89 in attorney's fees. American Risk points out that the contingency fee contract between the Abousways and their counsel, entered into evidence at trial, provided for attorney's fees of "36% of all 'net recoveries' realized after the commencement of trial." Because thirty-six percent of $309,827.49 is $111,537.89, not

$115,537.89, American Risk argues the trial court simply made an error that is unsupported by the evidence and should be modified on appeal.

The Abousways point to no evidence supporting the increased amount of attorney's fees, and our review of the record does not reveal any. Accordingly, we sustain American Risk's issue regarding the incorrect calculation of attorney's fees. In accordance with the evidence presented at trial, we modify the attorney's fee award to $111,537.89. *See* Tex. R. App. P. 43.2(b); *Hensley v. Jones*, 492 S.W.2d 283, 284–85 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ).

We affirm the judgment as modified.


/s/    Ken Wise
       Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.