NEW ENGLAND BOX & BARREL CO. *vs.* THE TRAVELERS FIRE INSURANCE CO.

OCTOBER 23, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

316

CAPOTOSTO, J. This is a bill in equity brought to reform a fire insurance policy issued by the respondent. The bill prays for reformation of the policy on the ground of mutual mistake. The cause was heard by a justice of the superior court on bill, answer, replication and proof. Thereafter the trial justice filed a rescript denying the prayer of the bill and a decree was entered in accordance with his decision. The complainant has duly appealed to this court from the entry of that decree. The only question before us is whether the policy should be reformed.

It appears in evidence that for some time prior to December 1933 Max Dix did business as an individual under the name and style of New England Box & Barrel Company. On December 22, 1933, he incorporated the "New England Box and Barrel Co." under the laws of this state. The name which Dix used while doing business as an individual is almost identical with the name he chose for the corporation. Dix claims that he transferred to the corporation all the

property of his business as an individual, and that thereafter the business was carried on by the corporation. He also claims that, while he is able to write his name, he can neither read nor write.

Since about 1930 Dix placed all liability and fire insurance with Everett C. Potter, a duly authorized agent of the defendant, who ran an account with Dix for such insurance. Dix testified that, as a rule, he paid the insurance premiums by check when Potter came either to his house or place of business; that these checks were filled in by one of his two sons, and sometimes even by Potter himself; and that all such payments were made with checks of the corporation after it came into existence. To support this claim he introduced in evidence nineteen checks, covering the period from May 11, 1934 to January 4, 1936. These checks are in the name of the "New England Box & Barrel Co. *Inc.*" (italics ours) It is to be noted in this connection that the abbreviation "Inc." is not a part of the name of Dix's corporation.

Dix further testified that, soon after the corporation was organized, he informed Potter of that fact and told him that the name of the corporation was "New England Box and Barrel"; and that he then instructed Potter thereafter to issue all his insurance in the name of the corporation, to which Potter agreed. According to Dix's testimony, Potter came to his house in connection with some insurance matter in March or April of 1935, and at that time he told Potter that "the corporation would like to put insurance on that particular place on Wampanoag Trail"; that Potter answered: "I will go down and look at the place"; that subsequently he and Potter went to the place in question; and that, after looking over the stock that was stored there, Potter said to him: "Max, when you got so much stuff on hand you ain't broke."

The policy in question is dated September 18, 1935, and insures "Max Dix doing business as New England Box and Barrel Company as now or may be hereafter constituted", in the sum of $1000, against direct loss by fire of boxes and barrels in a barn on Wampanoag road, East Providence, from July 31, 1935 to July 31, 1936. The barn and contents were totally destroyed by fire June 2, 1936.

On July 1, 1936, one Samuel Kasper, an accountant who attended to the corporation reports and tax returns, wrote the following letter to the respondent on instructions from Dix.

"Gentlemen:

Inclosed please find a sworn statement in Proof of Loss which is also the claim of the *signor* in regard to the fire loss mentioned therein.

If the amount of loss written therein is unacceptable to you, I demand the loss to be submitted to appraisal as provided by the policy and I hereby select Mr. Norman M. Tobey of 115 Empire St., Providence, R. I., as an appraiser to represent me.

Unless I have your acceptance or your nomination of an appraiser within one week, I shall consider this claim approved and payment to be made accordingly.

Yours very truly,

*Max Dix.*" (italics ours)

This letter was received by the respondent July 7, 1936.

Shortly after the sending of this letter, Dix consulted his attorney, who had prepared the articles of association and secured the charter for the corporation, about the fire loss in question. There is nothing in the testimony showing that Dix, at that time or at any time subsequent thereto, told his attorney that the property which was destroyed belonged to the corporation. In January 1937, Max Dix, as an individual, brought an action at law on the policy. This ac-

tion was later abandoned because of misnomer of the defendant, the present respondent, and a new action was brought by the same attorney again in the name of Max Dix. The declarations in both cases claimed that the fire loss was sustained by Max Dix, no mention being made in either case of the New England Box & Barrel Co., the corporation. In connection with this matter, the attorney testified as follows on cross-examination. "Q. You knew that Max Dix was doing business individually at times, and as a corporation at times? A. Well I didn't know particularly how he was doing business. I simply handled this matter in accordance with the information that was submitted to us *by him*." (italics ours)

Before the pleadings in the second case were closed, the defendant filed a motion for surety for costs. In answer to this motion Dix signed an affidavit of poverty, in which he stated that he had a good cause of action against the defendant. The case was thereafter assigned for trial four times, the last date being April 14, 1938. According to Dix's testimony, he first knew that the policy had not been issued in the name of the corporation when an associate counsel, who was preparing the case for trial, informed him of that fact. A few days later, on April 12, 1938, the present suit was filed for reformation of the policy on the ground of mutual mistake.

Potter, the defendant's agent, in substance testified that he could not remember Dix speaking to him about any corporation. In cross-examination he testified as follows. "Q. And I understand your position to be you have no recollection either way as to whether Mr. Dix told you that this insurance was to be taken out in the name of the corporation? A. I have no recollection of the point. Q. Either way? A. No. Q. You couldn't say he did, or did not? A. No."

In a carefully prepared rescript which fairly reviews the testimony, especially the part relating to the question whether instructions were in fact given by Dix to Potter to issue the policy in the name of the corporation, the trial justice denied the complainant's prayer for relief and dismissed the bill. In reaching this conclusion, he had "in mind that Mr. Dix cannot read, and also that the premiums for the various policies were paid by checks of the corporation." The fact that he had the opportunity of seeing and hearing the witnesses testify, an advantage not given to us, was of great aid to him in weighing the evidence and passing upon the credibility of the witnesses. He appraises the testimony of Dix and Potter in the following language. "We think that the testimony of Mr. Dix of the time and circumstances of the alleged instructions to Mr. Potter is indefinite and uncertain. Mr. Potter, while on the witness stand, appeared to strive for scrupulous fairness to Mr. Dix and to the respondent."

To warrant the reformation of an instrument on the ground of mutual mistake, the complainant must establish the affirmative allegations of his bill by a preponderance of the evidence which is clear and convincing. *Shapiro* v. *Albany Ins. Co. of New York,* 56 R. I. 18; *Dwyer* v. *Curria,* 52 R. I. 264; *Allen* v. *Brown,* 6 R. I. 386, 396. The trial justice expressly found that, in the circumstances disclosed by the evidence in this cause, the complainant had failed to establish by the required kind of proof that instructions were given by him to the respondent's agent to issue the policy in the name of the corporation; and he therefore found that a mutual mistake had not been made.

The complainant contends that, since the policy in question runs to "Max Dix doing business as New England Box and Barrel Company as now or maybe hereafter constituted", it in fact insures the corporation which he formed under the same name. This contention is without merit.

Max Dix and the corporation are distinct entities. The party insured by the policy is Max Dix, the individual, and no other. What follows his name in the above quotation is merely the trade name under which he did business as an individual.

The complainant further contends that because Dix testified that at some indefinite times and places he told Potter that he had formed a corporation, which would thereafter be the party insured and that Potter had no recollection of such instruction one way or the other, therefore the evidence was not conflicting on the controlling issue in this cause. We cannot agree with this contention, for it disregards two important elements: the credibility of Dix and the surrounding circumstances from the inception of the transaction under consideration to the filing of the present bill of complaint.

A discussion of the evidence is not necessary, for, in general terms, it speaks for itself. However, in examining the testimony, we were impressed by the fact that Dix at no time gave Potter the correct name of any corporation; and the latter testified that none of the policies which he wrote for Dix were issued in the name of any corporation, and this testimony was not denied by Dix.

Moreover, Dix as a witness may be contradicted by the facts he states, when viewed in the light of other circumstances in evidence, either extrinsic or intrinsic, as completely as by direct adverse testimony. *Gorman* v. *Hand Brewing Co.*, 28 R. I. 180. The conflict of evidence on the basic question in the instant cause results more from the surrounding circumstances and the reasonable inferences to be drawn therefrom than it does from the testimony, as such, of Dix and Potter.

Where the evidence is conflicting, either because of inherent improbabilities and contradictions in the testimony of

a witness or because of positive adverse testimony, it is well established with us that the findings of fact by the trial justice are entitled to great weight and will not be set aside unless clearly wrong. We find no reason to disturb the finding of the trial justice denying and dismissing the bill.

The complainant contends that the trial justice committed error in allowing the respondent to question Max Dix concerning certain judgments against him personally which were unsatisfied when he brought the present bill; and further, that said justice was in error in allowing the respondent to inquire about fires at other locations previously occupied by Max Dix. There is serious question whether this evidence was strictly relevant to the exact issue involved, but the admission of irrelevant evidence is not always ground for reversal; it is so only where it reasonably tends to prejudicially influence the trial court in its determination of the real issue in the cause.

The instant cause was tried by a justice of the superior court sitting without a jury. We have carefully examined his rescript with the view of ascertaining whether the evidence in question influenced him to the prejudice of the complainant. Our examination convinces us that the trial justice gave no weight whatever to such evidence. His rescript clearly shows that Max Dix's conduct in the matters above mentioned, which was not necessarily connected with the exact issue before the court, was completely ignored by the trial justice in arriving at his decision; and it further sets out the exact evidence upon which the trial justice relied to make his finding, namely, that the evidence for the complainant was too indefinite and uncertain to establish a mutual mistake. The error, if any, was therefore not prejudicial to the complainant.

We have examined the other grounds of error relied upon by the complainant and find them without merit.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Harlow & Boudreau,* for complainant.

*Henry M. Boss,* for respondent.