The TRAVELERS COMPANIES, d/b/a the Charter Oak Fire Insurance Company, Appellant,

v.

Maryon Aleene WOLFE, Appellee.

No. 07–91–0139–CV.

Court of Appeals of Texas, Amarillo.

Aug. 18, 1992.

McCleskey, Harriger, Brazill & Graff, Jim Hund, Lubbock, for appellant.

Maner, Martinez & Lanehart, Vince Martinez, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

This appeal presents the unique question whether after the dissolution of the marriage, the innocent ex-spouse can recover on her retained claim to proceeds under a policy of insurance covering property of the then community-owned corporation, the stock of which upon divisions of the community estate was adjudged the separate property of the other ex-spouse, who had intentionally set fire to the covered property during the marriage. Under the attendant facts and circumstances of this cause, we will reform and affirm the judgment of the trial court decreeing recovery by the innocent ex-spouse.

Maryon Aleene Wolfe and Ralph Terry Wolfe, a married couple using community assets, began a business under the name Computer Creations Unlimited. Ralph obtained insurance for personal property through The Travelers Companies d/b/a The Charter Oak Fire Insurance Company, collectively referred to herein as Charter Oak. The policy, a Texas Commercial multi-peril policy, was issued showing the named insured as "Ralph T. Wolfe dba Computer Creations Unlimited." [1]

In 1985, the Wolfes incorporated their business as Computer Creations Unlimited, Inc., which assumed all assets of the business, with each of them owning 500 shares of stock. In January of 1986, Ralph renewed the insurance policy without change. The premiums on the policy were paid and current at all times relevant to these proceedings.

On 30 November 1986, the property at Computer Creations Unlimited, Inc., was destroyed by fire. On 20 February 1987, Ralph, as Computer Creations Unlimited, filed a proof of loss with Charter Oak to recover under the policy for loss of the insured property. On 23 March 1987, Charter Oak denied the claim for the stated reasons that Computer Creations Unlimited, Inc., was not the named insured under the policy and that, based upon the infor-

---

1. The original policy read "Ralph *J.* Wolfe dba Computer Creations Unlimited," but the error was corrected through appropriate documentation. On 20 November 1986, Ralph, by two separate change forms, added peak season endorsements and loss earnings coverage. The record reflects no other changes to the policy.

mation provided, the fire resulted from fraudulent, dishonest or criminal acts of the insured.

On 18 May 1987, the court granted the Wolfes a divorce, and divided their community estate. By its decree, the court awarded Ralph all the corporate stock of Computer Creations Unlimited, Inc. as his separate property, and provided that Maryon "shall retain any rights she may have to file an insurance claim for losses incurred as a result of the fire at Computer Creations, Unlimited, Inc., and any insurance proceeds she receives from such claim shall be her sole and separate property."

Maryon brought the present cause of action alleging she was the legal and equitable owner of an undivided one-half interest in the insurance policy and the destroyed property. By her amended petition, she alleged that Charter Oak had wrongfully breached its contract in denying the claim for the loss, and she was entitled to recover under the policy because she owned 500 of the total 1000 shares of the corporation and one-half of the monies used to pay the premiums.

Charter Oak answered, and denied liability on the policy. It averred that Maryon was not entitled to collect the proceeds under the policy because the business was community property destroyed by the willful actions of her spouse, Ralph, and because neither Maryon nor Computer Creations Unlimited, Inc., was a named insured under the policy.

Following the trial, the jury found that the fire which destroyed Computer Creations was started by or at the instigation of Ralph, and that Maryon neither directly or indirectly participated in the arson. The trial court rendered judgment nunc pro tunc awarding Maryon $54,725.40.[2]

By four points of error, Charter Oak contends the judgment is erroneous. This obtains, Charter Oak submits, because (1) an innocent spouse cannot recover under a policy of insurance for community property willfully destroyed by the other spouse, (2) Ralph did not own the insured property, (3)

Maryon's trial counsel was not properly designated as an expert witness and should not have been allowed to testify, and (4) the statement prepared in connection with Ralph's bankruptcy proceedings should not have been excluded from evidence.

Primarily relying on the decision in *Jones v. Fidelity & Guaranty Ins. Corp.*, 250 S.W.2d 281 (Tex.Civ.App.—Waco 1952, writ ref'd), Charter Oak contends that Maryon cannot recover under the policy of insurance for destroyed community property because Ralph willfully set fire to the property. In *Jones*, Edward and Annie Mae Jones, a married couple, secured a Texas standard fire insurance policy insuring their homestead. Subsequently, Annie Mae was granted a divorce from Edward, but the divorce decree did not make a disposition of their community property. Afterwards, and while the policy was in force, Edward feloniously burned the dwelling without Annie Mae's knowledge of or connection to his unlawful act. She sought to recover one-half of the loss on the premise that she was not Edward's wife at the time of the loss, his conduct could not be imputed to her, and they were tenants in common of the insured property since the divorce decree did not make disposition of it.

The *Jones* court, addressing a case of first impression in Texas, noted the traditional rule that fraudulent losses are excepted from coverage of fire insurance contracts upon grounds of public policy. Observing that the right of recovery for a loss by either Edward or Annie Mae, or both, was a joint right which inured to the mutual benefit of both, the court stated that any recovery would have been community property of both so long as they continued to be married. The court added that the fact they became divorced after the policy was issued did not change the legal consequences so far as Annie Mae was concerned. Following the rules, found to be fundamentally sound and applied by out-of-state authorities, to the effect that an innocent owner cannot recover on the policy

**2.** The judgment corrected a mathematical error in the award of $56,033.50 contained in the original judgment.

when a co-owner willfully sets the insured property on fire, the court held that the act of arson by Edward, the former husband, rendered the entire policy void and deprived Annie Mae, the former wife, of any lawful right of recovery. *Id.* at 283.

Facially, the *Jones* decision directs that Maryon be denied recovery; however, the reasoning supporting that decision was re-examined in *Kulubis v. Texas Farm Bureau Underwriters,* 706 S.W.2d 953 (Tex. 1986), and resulted in the holding that

> the more enlightened reasoning dictates that the illegal destruction of jointly owned property by one co-insured shall not bar recovery under the insurance policy by an innocent co-insured. A trial court is uniquely situated to make the determination of the co-insured's innocence, and unless there is a finding of lack of innocence, the co-insured shall be permitted to recover.

*Id.* at 955. The holding was applied to permit the wife, Betty Kulubis, to recover one-half of the loss for her undivided one-half separate property interest in an insured mobile home given to her and her husband, John Kulubis, who set fire to it without Betty's knowledge or participation in its destruction.

In reaching its decision, the *Kulubis* court acknowledged that:

> Texas courts are faced with an additional problem in this situation because we are a community property state. It is not necessary for us to address that particular problem at this time inasmuch as the mobile home in question was a gift to Betty and John and as such an undivided one-half interest was the separate property of each of them. We are not to be understood as holding that an innocent spouse is barred from recovering under an insurance policy covering community property. We do not have that fact situation before us and therefore do not address the problem of how to compensate the innocent spouse and yet not permit benefit to the wrongdoing spouse. That problem will be addressed when and if it is presented to us.

*Id.* That problem, if there be one, is presented to us first.

There really is no problem, Charter Oak urges, because the *Jones* holding still controls the present fact situation, particularly since the Fifth Circuit has twice declined to extend *Kulubis* to allow an innocent spouse any recovery on a policy insuring community property willfully destroyed by the other spouse. The opinion in the first of those two causes, *Norman v. State Farm Fire & Cas. Co.,* 804 F.2d 1365 (5th Cir.1986), was issued on the heels of *Kulubis,* but affirmed the denial of recovery to the Normans, including the wife's claim on appeal, when the husband was found to have burned the couples' insured residence. After considering the *Kulubis* opinion, the court stated:

> [I]t would be a strange rule indeed that guaranteed the would-be arsonist a minimum of one-half of the insured value of his building—paid in cash and as community property—even were he found guilty of the act, so long as he arranged matters so that the insurance company could not prove that he had let his spouse in on the scheme.

*Id.* at 1366. Nevertheless, the court acknowledged that

> developments after the fact of destruction—developments such as a divorce and property allocation—may so bring matters about that the culpable spouse receives no benefit from his act of arson.

*Id.* at 1366–67.

The second Fifth Circuit cause, *Webster v. State Farm Fire and Cas. Co.,* 953 F.2d 222 (5th Cir.1992), involved a fact situation similar to the one before us. There, when the insured home of Guy and Etta Webster was burned by Guy, they both filed a claim, which was denied by State Farm, the insuring company. Subsequently, Guy and Etta were divorced and, by the division of their community estate, each was awarded one-half of the net insurance proceeds, if any, from the loss of the home in the fire. After the divorce, both charged State Farm with breach of contract in denying their claim, but they suffered a take-nothing summary judgment. On appeal, Etta argued that she was entitled to one-half the proceeds, because her share was now her

separate property and Guy would receive no benefit from the reimbursement for her loss.

Noting the recognition in *Norman* that after-the-fact developments of divorce and property allocation might result in the culpable spouse receiving no benefit from his act of arson, the *Webster* court acknowledged that because of the divorce, Guy would receive no benefit should State Farm reimburse Etta for her loss. However, the court considered that matter irrelevant to its analysis; what it considered relevant was that at all times pertinent to State Farm's decision to deny recovery—the date the policy was issued, the date of the fire, the date the Websters filed their claim, and the date the claim was refused—the insured property was community, and had State Farm compensated Etta alone, Guy would have benefitted from his wrongdoing because the payment would have constituted community property. Apparently fitting its rationale to the traditional rule applied in *Jones* and *Norman,* the court held that State Farm did not breach its contract, and affirmed the take-nothing summary judgment. *Id.* at 223–24.

 Obviously, the application of the *Webster* rationale to our facts mandates that Maryon be denied any recovery. Yet, the Fifth Circuit's decision, even if persuasive in its interpretation of Texas law, will not control our decision which must be determined by our Supreme Court's pronouncements on the law. *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). Contrary to *Jones, Norman,* and *Webster,* our Supreme Court has opted for the principle that the illegal destruction of jointly owned property by one co-insured shall not bar recovery under the insurance policy by an innocent co-insured and, albeit not addressing insured community property, said, "We are not to be understood as holding that an innocent spouse is barred from recovering under an insurance policy covering community property." *Kulubis v.*

*Texas Farm Bureau Underwriters,* 706 S.W.2d at 955.

In this cause, at the time the policy was issued, the fire occurred, and the claim for loss was filed and denied, the insured property was community, and any reimbursement then paid by Charter Oaks would have been community property of the Wolfes. Still, under the *Kulubis* holding, these facts would not have prevented a recovery by Maryon because, when the issue was tried, she was exonerated by the jury from any participation in the fire.

We are not faced with the problem of how to compensate Maryon for her community property interest in insurance proceeds without benefiting Ralph, the wrongdoer, for at the time Maryon established her claim to one-half of the loss, the claim, and her right to receive the proceeds, was her separate property by virtue of the final divorce decree. It follows, and we hold consistent with the *Kulubis* decision, that Maryon was entitled to receive one-half of the insurance reimbursement for the loss occasioned by the fire unless, as Charter Oak maintains, there is another reason to defeat her recovery. Charter Oak's first point of error is overruled.

Another reason to deny Maryon recovery, Charter Oak has submitted with its second point, is that Ralph, the named insured whose property was insured, did not own the destroyed property, which was owned by Computer Creations Unlimited, Inc., a separate corporation. Charter Oak pleaded the lack of coverage as a defense and, when Maryon made no attempt to seek reformation of the insurance policy, unsuccessfully moved for an instructed verdict. Because it was Ralph's personal property, not the corporation's, that was insured, Charter Oak argues on appeal for a reversal and rendition under the general rule that the insurance contract must be enforced as made. *American–Amicable Life Insurance Company v. Lawson,* 419 S.W.2d 823, 826 (Tex.1967).[3] Under the

---

**3.** Charter Oak represents that in a virtually identical situation in *New England Box & Barrel Co. v. Travelers Fire Insurance Co.,* 63 R.I. 315, 8 A.2d 805 (1939), the court, recognizing the legal distinction between a corporate entity and an individual, enforced the policy as written. However, that cause was a suit to reform a policy on the ground of mutual mistake, which the court found had not been made.

facts of this cause, we are not persuaded to accept the reason.

■ Although the policy shows the named insured as "Ralph T. Wolfe dba Computer Creations Unlimited," the policy "covers business personal property of the insured," and an endorsement provides that if the named insured is an individual, the persons insured are the named insured and his spouse with respect to the conduct of a business at which he is the sole proprietor. Attachments to the policy showing the premium rate analysis are all headed "Computer Creations." Another endorsement provides coverage on personal property at locations owned, leased, operated, or regularly used by the insured, and specifies the amount and the address, which was the address of Computer Creations Unlimited, Inc. at the time of the fire. Perhaps it was these provisions that caused Charter Oak's Senior Supervisor of Claims, when asked if the policy insured a business, to reply, "Yes. Computer Creations Unlimited." Furthermore, although the Supervisor acknowledged one of the reasons for denial of the claim was that it appeared the corporation was not an insured under the policy, he chose to say it was "a minor point," and "[i]f everything else was okay, I don't think that would create a problem."

■ Moreover, even though Maryon did not own the personal property of the corporation which was destroyed by the fire, her then ownership of one-half of the corporate stock vested her with an insurable interest in the property insured by the policy. *Pacific Fire Ins. Co. v. John E. Morris Co.*, 12 S.W.2d 971 (Tex.Comm'n App.1929). That interest was, by virtue of the divorce decree, retained by her as her separate property, and the interest was of such a nature that it was covered by the insurance policy. *Id.* Charter Oak's second point of error is overruled.

During trial, Maryon's counsel proposed to testify as an expert on the issue of attorney's fees. Upon Charter Oaks's objection to the receipt of the testimony because counsel was not identified as an expert witness in response to its interrogatories, counsel moved to supplement the answers, taking the position that there was no surprise since there was a plea for attor-

ney's fees. The court granted the motion without being requested to find, or finding, good cause for the failure to timely identify counsel as an expert witness. Counsel testified that reasonable and necessary attorney's fees would be $7,500, the amount found by the jury and included in the judgment.

■ The admission of counsel's testimony and the award of attorney's fees are assigned as reversible error by Charter Oak with its third point. We agree. The failure to identify counsel as an expert witness no later than thirty days before the beginning of the trial resulted in the exclusion of his testimony unless he demonstrated good cause for its admission. Tex. R.Civ.P. 215(5); *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987). The only cause offered by counsel was an absence of surprise, which does not satisfy the good cause exception to the sanction of automatic exclusion of the testimony. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d 669, 671 (Tex.1990). Thus, the admission of counsel's testimony was reversible error in that it was reasonably calculated to and probably did cause the rendition of an improper judgment, because there was no other evidence of attorney's fees. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). It follows that Maryon was not entitled to attorney's fees, *E.F. Hutton & Co., Inc. v. Youngblood*, 741 S.W.2d at 364, and the sum of $7,500 awarded therefor must be eliminated from the judgment. Charter Oak's third point of error is sustained.

The amount of the inventory and equipment destroyed in the fire was a contested issue. To contradict Maryon's evidence of a loss exceeding $179,000, depicted by an inventory she and Ralph reconstructed soon after the fire, Charter Oak sought to introduce a questionnaire executed on 25 September 1987 by Ralph under penalty of perjury and filed in his personal bankruptcy proceeding after the divorce. Upon Maryon's objection, Charter Oak made a limited offer of question 14 in the questionnaire, which first asked for the particulars of any losses Ralph had suffered from fire

or other events, to which he answered "Computer Equipment Valued $8,060.00" in the fire, and then inquired whether the loss was covered in whole or in part by insurance, to which Ralph answered, "No." The court excluded the document upon Maryon's further objection of hearsay, and Charter Oak offered the document for the purpose of perfecting a bill of exception.

The exclusion, Charter Oak charges with its fourth point, was error. The document's admission was authorized, Charter Oak says, by Texas Rule of Civil Evidence 803(15), an exception to the hearsay rule for statements in documents affecting an interest in property, or, alternatively, by the subsequent rule 803(24), an exception for a statement against interest.

The questionnaire, being offered to prove the truth of the value Ralph placed on his destroyed computer equipment, was hearsay and, therefore, inadmissible by operation of Rules 801(d) and 802, Texas Rules of Civil Evidence, unless the hearsay rule did not apply. The questionnaire would not be excluded by the hearsay rule if it came within Rule 803(15) by "purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document."

■ Accepting that the bankruptcy document's trustworthiness is guaranteed, and assuming, arguendo, that Ralph's answers qualify as a statement "purporting to establish or affect an interest in property" within the purview of rule 803(15) so as to be admissible, the rule itself does not abrogate the traditional requirements of relevancy, competency, or materiality of the hearsay statements. The admissibility of the document imparts no probative force to Ralph's hearsay statements if they are irrelevant and incompetent to deny a material issue in the cause. *Henry v. Phillips*, 105 Tex. 459, 151 S.W. 533, 538 (1912).

Charter Oak offered the questionnaire to show "the loss amounted to $8,060.00" in contradiction of the evidence that Ralph and Maryon reconstructed an inventory detailing a loss of more than $179,000. Evidently, it did not escape the trial court's notice that Ralph's statement was limited to an uninsured loss of his computer equipment valued at $8,060, whereas the inventory introduced by Maryon to exhibit an insured loss of $179,000 comprised eight pages of single space listings of hundreds of items, some of which were computer equipment. Being unconnected to, or offered to contradict the value of, any computer equipment listed in Maryon's inventory, Ralph's statement of an uninsured loss of computer equipment was neither competent to evidence "the loss amounted to [only] $8,060.00," nor relevant as tending to make the proof of the amount of Maryon's loss less probable than it would be without Ralph's statement. *See* Tex.R.Civ. Evid. 401, 402. Consequently, the trial court cannot be faulted for excluding the evidence offered on the authority of rule 803(15).

■ Neither do we consider the court erred in excluding the portion of the questionnaire offered under rule 803(24). The rule excludes from the hearsay rule, insofar as material here, "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render a claim by him against another ... that a reasonable man in his position would not have made the statement unless he believed it to be true."

Inherent in the rule is that the admissibility of the statement as one against Ralph's interest must be tested as of the time it was made, and the facts stated must have been against his interest, i.e., the facts stated must have been disserving and not self-serving. *Duncan v. Smith*, 393 S.W.2d 798, 803–04 (Tex.1965). Aside from the fact that Ralph's statement was limited to the value of his uninsured computer equipment, which was only a part of the multitude of items listed in the inventory submitted by Maryon, there is no showing that Ralph's answers were a statement against his interest.

Charter Oak denied Ralph's original claim for reimbursement for more than $194,000 due to the fire, but there was no evidence linking his answer of uninsured computer equipment valued at $8,060 to any computer equipment listed in his claim or in Maryon's inventory at a different amount. Moreover, there was no evidence that at the time he answered the questionnaire, he was making a claim in any forum at odds with his answer so as to make the answer contrary to his pecuniary or proprietary interest as required by rule 803(24) for admissibility. Thus, without more, Ralph's answer was not shown to be against his interest and, therefore, the questionnaire was inadmissible. *Duncan v. Smith*, 393 S.W.2d at 802. Charter Oak's fourth point of error is overruled.

The judgment of the trial court is reformed to eliminate therefrom the award of $7,500 for attorney's fees and, as reformed, is affirmed. Eighty-six percent of the costs occasioned by this appeal are taxed to The Travelers Companies d/b/a The Charter Oak Fire Insurance Company, and fourteen percent are taxed to Maryon Aleene Wolfe. Tex.R.App.P. 89.