**TEXAS FARMERS INSURANCE COMPANY, Petitioner,**

v.

**Daisy MURPHY, Respondent.**

**No. 98–0661.**

Supreme Court of Texas.

Argued Jan. 14, 1999.

Decided July 1, 1999.

Rehearing Overruled Aug. 26, 1999.

William J. Boyce, Stephen P. Pate, Houston, for Petitioner.

Thomas Lee Bartlett, Tom F. Coleman, Houston, for Respondent.

Justice GONZALES delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice BAKER, Justice ABBOTT, Justice HANKINSON, and Justice O'NEILL joined.

The question posed is whether an innocent spouse can recover insurance proceeds when the other co-insured spouse has intentionally destroyed the covered community property. The court of appeals based its affirmative answer on the fact that the spouses partitioned the community before the trial began. 982 S.W.2d 79. We affirm the court of appeals' judgment, but for different reasons: (1) the policy contractually entitles the co-insured spouse to recover, absent defenses not preserved in this case, and (2) the public policy defenses presented in this case do not overcome the co-insured's contractual right of recovery.

## I

On September 23, 1993, Robert Murphy obtained a binder on a standard homeowners insurance policy covering his and his wife Daisy Murphy's home and contents. On September 30, 1993, the Murphys' home burned down. Robert sought reimbursement under the policy. Texas Farmers Insurance Company investigated the claim and concluded that Robert intentionally caused the fire.

On February 19, 1994, Farmers filed suit seeking a declaratory judgment of nonliability under the insurance policy. Farmers alleged that public policy prohibits arsonists from recovering for their losses. Farmers further alleged that Robert misstated and willfully concealed material facts, vitiating coverage under the insurance policy's concealment clause. Robert counterclaimed for breach of contract and violations of the Texas Insurance Code. In December 1995, Daisy intervened and filed her own claim for the policy benefits.

Meanwhile, Daisy filed for divorce, and on March 8, 1996, she and Robert executed a partition agreement to divide their community interests in any proceeds from the policy. Robert and Daisy's divorce became final on October 11, 1996.

The trial was held March 12–14, 1996. The court submitted a jury charge asking whether Robert caused the fire and whether Daisy had prior knowledge of or participated in the arson. Farmers did not submit or request questions asking whether Robert or Daisy intentionally misrepresented or concealed any material facts. The jury found that Robert burned down the home but that Daisy was innocent of prior knowledge of or complicity in the arson. On October 17, 1996, the trial court, notwithstanding the jury's innocent-spouse finding, rendered a take-nothing judgment against both Robert and Daisy.

The court of appeals reversed the take-nothing judgment against Daisy and rendered judgment that she take half of the amount the jury awarded for the Murphys' loss. In its petition for review, Farmers argues that both the policy language and public policy prohibit Daisy's recovery.

## II

Until 1986, the deliberate destruction of jointly-owned property by one co-insured barred recovery by other co-insureds, even when they were innocent and the policy did not expressly bar such recovery.[1] In *Kulubis v. Texas Farm Bureau Underwriters Insurance Co.,*[2] we reexamined that rule. Betty Kulubis sued to recover homeowners policy benefits covering a mobile home that her husband intentionally destroyed in a fit of rage after she served

---

1. *See Jones v. Fidelity & Guar. Ins. Corp.,* 250 S.W.2d 281, 282–83 (Tex.Civ.App.—Waco 1952, writ ref'd); *see also Western Fire Ins. Co. v. Sanchez,* 671 S.W.2d 666, 669–70 (Tex. App.—Tyler 1984, writ ref'd n.r.e.); *Bridges v. Commercial Standard Ins. Co.,* 252 S.W.2d 511, 512–13 (Tex.Civ.App.—Eastland 1952, no writ) (both extending rule to any property in which the culpable spouse had a homestead interest).

2. 706 S.W.2d 953 (Tex.1986).

him a divorce citation. Citing public policy and Betty's "reasonable expectations," we held that she was entitled to recover her share of the insurance proceeds.[3]

In *Kulubis*, we indicated "that the proper test to be applied was what a reasonable person would have understood the fire insurance policy to mean."[4] In support of that test, we cited several out-of-state cases that construed the terms of homeowners policies to allow recovery by innocent co-insureds of those who had deliberately destroyed their jointly-owned property.[5] The paramount question in those cases was whether the contract terms supported such a recovery. Although the *Kulubis* opinion did not cite any policy provisions, the same paramount question was implicit in our analysis there. And *Kulubis*'s implicit answer was yes. Indeed, our review of the *Kulubis* record confirms that the policy did *not* explicitly bar Betty's recovery.[6] In short, based on the policy terms, Betty would have reasonably understood the policy to provide such coverage.

In *Kulubis*, we also held that public policy supported Betty's right to recover her share of the insurance proceeds. Bar-

ring her recovery would have unjustly enriched Texas Farm by freeing it of its contractual obligation to her.[7] Moreover, denying Betty any recovery despite her contractual right to it would have imputed her estranged husband's criminal wrongdoing to her, the target and victim of his outrage.[8] On the other hand, allowing Betty, a completely innocent spouse, to recover did not work a fraud on the insurance company.[9] Moreover, because she had a separate, rather than a community interest in her mobile home, her recovery did not directly benefit her husband.[10]

Although in *Kulubis* we stated that in general, "the illegal destruction of jointly owned property by one co-insured shall not bar recovery under an insurance policy by an innocent co-insured," we expressly did not decide whether the principle applied to community property.[11] The question we reserved presents a more difficult public policy dilemma. Fire insurance proceeds generally take the place of the destroyed property.[12] If the destroyed property is community property, any proceeds will become community property in which the culpable spouse will necessarily

---

3. *See id.* at 955.

4. *Id.* at 954 (citing *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N.H. 242, 29 A.2d 121, 123 (1942)).

5. *See id.* at 954 n. 1.

6. Although not quoted in the opinion, the only clause in the *Kulubis* insurance policy that could have arguably barred Betty's recovery, had Texas Farm argued and obtained findings for it, was a concealment clause stating that "[t]his entire policy shall be void if, whether before or after a loss, **the** insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance, or the subject thereof ...." (emphasis added). *See* S.F. 32, *Kulubis v. Texas Farm Bureau Underwriters Ins. Co.*, 706 S.W.2d 953 (Tex. 1986). But several out-of-state cases, many of which *Kulubis* cited, have construed similar provisions as preventing recovery only by the culpable individual responsible for causing the loss. *See, e.g., Morgan v. Cincinnati Ins. Co.*, 411 Mich. 267, 307 N.W.2d 53, 54 (1981); *Hildebrand v. Holyoke Mut. Fire Ins. Co.*, 386 A.2d 329, 331 (Me.1978); *Pawtucket*

*Mut. Ins. Co. v. Lebrecht*, 104 N.H. 465, 190 A.2d 420, 422–23 (1963); *McCauley Enters., Inc. v. New Hampshire Ins. Co.*, 716 F.Supp. 718, 720 (D.Conn.1989). In any event, Texas Farm never argued that this language expressly barred Betty's recovery.

7. *See Kulubis*, 706 S.W.2d at 955.

8. *See id.*

9. *See id.*

10. *See id.* The mobile home was not community property because Betty's parents had given it to Betty and her estranged husband. *See* Tex. Const. art. XVI, § 15 (stating that all property a spouse acquires by gift shall be the separate property of that spouse).

11. *Id.*

12. *See Swayne v. Chase*, 88 Tex. 218, 30 S.W. 1049, 1051–52 (Tex.1895); *Chubb Lloyds Ins. Co. v. Kizer*, 943 S.W.2d 946, 952 (Tex.App.— Fort Worth 1997, writ denied).

have an interest unless there is a divorce or partition agreement.[13]

Here, of course, we have a partition agreement. Any insurance benefits Daisy receives will now become her separate property. But this does not make the issue of recovery as simple as the one *Kulubis* addressed. In *Kulubis*, the spouses' interests in the insured property were separate from the outset. The innocent spouse could recover even without a partition or divorce. Here, to condition recovery under a policy covering community property on a post-arson partition or divorce in order to deny a benefit to the culpable spouse raises three difficult issues.

First, should courts craft a rule that may encourage partition or divorce? Second, by what date must the spouses partition or divorce—before the incident occurs, the claim is made, the insurer denies coverage, the start of trial, or the final judgment? Third, can any rule be crafted to allow innocent spouses to recover and ensure that the culpable spouse never benefits? If spouses partition or divorce but still live together or share their resources, the culpable spouse can still indirectly benefit. Not surprisingly, several post-*Kulubis* cases have struggled with these issues.

The Fifth Circuit decided *Norman v. State Farm Fire & Casualty Co.*[14] shortly after the *Kulubis* decision. The jury found that Mr. Norman intentionally burned down his community-owned home. The Fifth Circuit held that because Mr. Norman would benefit from Mrs. Norman's recovery, public policy barred Mrs. Norman from recovering under the policy, even if she was innocent.[15] Of *Kulubis*'s various public policy considerations, that a wrongdoer not benefit from his wrongdoing was, in the Fifth Circuit's judgment,

"by far the dominant one."[16] The court warned that a rule permitting recovery whenever an insurance company could not prove both spouses' complicity would encourage collusion and threaten public safety.

The Fifth Circuit extended *Norman*'s holding in *Webster v. State Farm Fire & Casualty Co.*[17] Guy and Etta Webster filed a claim with State Farm after their house burned down. State Farm denied the Websters' claim, contending that Guy had committed arson. The Websters divorced and then sued State Farm for breach of contract. Etta moved for summary judgment that, because her share of the property was separate by virtue of the divorce, she was entitled to one half of the proceeds regardless of whether Guy caused the fire. The Fifth Circuit held that no contract breach occurred because "[a]t all points of time pertinent to State Farm's decision to deny recovery—the date the policy was issued, the date of the fire, the date the Websters filed their claim, and the date the claim was refused—the property was community."[18] The court acknowledged that the result was harsh, but pointed out that "[h]ad State Farm compensated Etta alone when the Websters filed their claim, Guy, the arsonist, would have benefitted from his wrongdoing because the payment would have constituted community property."[19]

The Seventh Court of Appeals rejected *Webster*'s reasoning in *Travelers Cos. v. Wolfe.*[20] After fire destroyed Ralph Wolfe's community-owned business, he submitted a claim to the Charter Oak Fire Insurance Company to recover losses under a commercial multi-peril insurance policy. Charter Oak denied the claim, alleging that Ralph caused the fire. Two

13. *See Jones,* 250 S.W.2d at 282.

14. 804 F.2d 1365 (5th Cir.1986).

15. *See id.* at 1366–67.

16. *Id.* at 1366.

17. 953 F.2d 222 (5th Cir.1992).

18. *Id.* at 223.

19. *Id.* at 224.

20. 838 S.W.2d 708, 712 (Tex.App.—Amarillo 1992, no writ).

months later, Ralph and Maryon Wolfe divorced. Maryon then sued Charter Oak, claiming that whether or not Ralph destroyed the property, she was entitled to recover benefits as the owner of an undivided one-half interest in the insurance policy and destroyed property. The court of appeals agreed, explaining that "[w]e are not faced with the problem of how to compensate Maryon for her community property interest in insurance proceeds without benefitting Ralph, the wrongdoer, for at the time Maryon established her claim to one half of the loss, the claim, and her right to receive the proceeds, was her separate property by virtue of the final divorce decree."[21]

In *Chubb Lloyds Insurance Co. v. Kizer*,[22] the Second Court of Appeals disagreed with the *Wolfe* decision and adopted *Norman*'s reasoning. It held that Terrie Kizer, whose husband Kris the jury found caused the fire, was not entitled to any insurance proceeds covering her share of the personal property the fire destroyed.[23] The court noted that the Kizers remained married at all times pertinent to the case.[24] The court explained that "[a]bsent a severance of the Kizers' community estate, Terrie cannot recover for community property without benefitting Kris."[25]

In this case, the court of appeals adopted the *Wolfe* court's rationale. It reasoned that because Daisy and Robert executed a partition agreement before trial separating their interests in any insurance proceeds, the situation mirrored *Kulubis*, in which the culpable spouse had no right to recover.[26] Echoing *Kulubis*'s public policy considerations, the court held that "[r]ecovery by Daisy Murphy will not

cause a fraud on Farmers; will ensure that Farmers will not be unjustly enriched to Daisy Murphy's detriment; and will ensure that her reasonable expectations, as an innocent co-insured, will be met."[27]

## III

■ The foregoing cases share a common shortcoming. They all focus on conflicting public policy considerations without first evaluating the contract language. Although *Kulubis* may not make it clear, a court should not decide the question of public policy without first determining the contractual rights of the parties under the policy. Indeed, the principal case *Kulubis* cited states that whether an innocent co-insured can recover is a question of construction.[28] And as another case considering this issue has held, "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous."[29] Therefore, we examine whether Daisy can recover under the contract's terms.

■ The parties agree that Robert's binder was for the 1991 Texas Standard Homeowners—Form B. The form was promulgated by the Texas Board of Insurance.[30] Subject to the policy limits and some enumerated exclusions, the policy insures fire damage losses to an insured's home and its contents. The policy defines an "insured" as the named insured and any residents of the named insured's household who are relatives or who are less than twenty-one years old and in the care of the named insured. Farmers does not challenge Daisy's standing as an insured under the policy.

---

**21.** *Id.* at 712.

**22.** 943 S.W.2d 946, 952 (Tex.App.—Fort Worth 1997, writ denied).

**23.** *See id.*

**24.** *See id.*

**25.** *Id.*

**26.** *See* 982 S.W.2d at 83.

**27.** *Id.*

**28.** *See Hoyt,* 29 A.2d at 123.

**29.** *McAllister v. Millville Mut. Ins. Co.,* 433 Pa.Super. 330, 640 A.2d 1283, 1288 (1994).

**30.** *See Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 741–42 (Tex.1998) (discussing the origins of the 1991 Texas Standard Homeowners—Form B policy).

Initially, we note that unlike some homeowners policies, the Texas Standard Homeowners Policy—Form B does not include a clause barring or limiting recovery for losses intentionally caused by an insured.[31] Section II of the policy excludes personal liability coverage for "bodily injury or property damages which is caused intentionally by or at the direction of the insured," but no similar exclusion applies to the insured's own property losses.

The policy, however, does include a condition to bar coverage for all insureds if any one of them commits a fraud or intentionally conceals or misrepresents a material fact:

> **Concealment or Fraud.** This policy is void as to you and any other *insured*, if you or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

Farmers claims that Robert triggered this exclusionary condition by making a claim on the policy after intentionally burning his house down. Farmers further asserts that this condition unambiguously bars recovery not only by Robert, but also Daisy.[32]

In Texas, insurance contract interpretation is governed by general contract interpretation rules.[33] Our goal is to give effect to the written expression of the parties' intent, viewing the contract in its entirety, consistent with applicable rules of law.[34] A plaintiff seeking recovery under an insurance policy, however, must prove only those provisions that allow recovery.[35] If there are any contractual provisions that could limit or bar recovery, it is incumbent on the insurer to plead and prove them.[36] Although we generally "striv[e] to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative," [37] an insurer who does not plead or prove any applicable exclusionary provision waives the effect of that provision.[38]

Farmers's assertion of fraud was an affirmative defense to its liability under the contract.[39] Thus, Farmers had the burden to plead, prove, and secure find-

**31.** See, e.g., Brown v. United States Fidelity & Guar., 277 Ariz. 27, 977 P.2d 807, 817 (1998); Noland v. Farmers Ins. Co., 319 Ark. 449, 892 S.W.2d 271, 273 (1995); Chacon v. American Family Mut. Ins. Co., 788 P.2d 748, 752 (Colo.1990) (en banc); USAA Cas. Ins. Co. v. Gordon, 707 So.2d 1185, 1187 (Fla.Dist.Ct. App.1998); Vance v. Pekin Ins. Co., 457 N.W.2d 589, 593 (Iowa 1990); Woodhouse v. Farmers Union Mut. Ins. Co., 241 Mont. 69, 785 P.2d 192, 194 (1990); Allstate Ins. Co. v. Stamp, 134 N.H. 59, 588 A.2d 363, 365 (1991); Rena, Inc. v. Brien, 310 N.J.Super. 304, 708 A.2d 747, 756–59 (1998); Fernandez v. Cigna Property & Cas. Ins. Co., 188 A.D.2d 700, 590 N.Y.S.2d 925, 927 (1992); Dolcy v. Rhode Island Joint Reins. Ass'n, 589 A.2d 313, 316 (R.I.1991) (all holding that unambiguously worded intentional-loss or criminal-conduct provisions barred recovery by innocent co-insureds).

**32.** Several out-of-state cases, focusing on the modifier "any," have held that similar concealment and fraud clauses unambiguously bar recovery by innocent co-insureds. See Sales v. State Farm Fire & Cas. Co., 849 F.2d 1383, 1386 (11 th Cir.1988) (applying Georgia law); Pink Cadillac Bar & Grill, Inc. v. United States Fidelity & Guar. Co., 22 Kan.App.2d 944, 925 P.2d 452, 457 (1996); Amick v. State Farm Fire & Cas. Co., 862 F.2d 704, 706 (8 th Cir.1988) (applying Missouri law); Spezialetti v. Pacific Employers Ins. Co., 759 F.2d 1139, 1142 (3 rd Cir.1985) (applying Pennsylvania law); State Farm Fire & Cas. Ins. Co. v. Walker, 157 Wis.2d 459, 459 N.W.2d 605, 608 (1990).

**33.** See Balandran, 972 at 740–41; Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133–34 (Tex.1994).

**34.** See Balandran, 972 S.W.2d at 741; Forbau, 876 S.W.2d at 133.

**35.** See Paragon Sales Co. v. New Hampshire Ins. Co., 774 S.W.2d 659, 661 (Tex.1989) (per curiam).

**36.** See id.

**37.** Balandran, 972 S.W.2d at 741.

**38.** See Paragon Sales, 774 S.W.2d at 661.

**39.** See Tex.R. Civ. P. 94.

ings to sustain this defensive plea of fraud.[40]

■ Although Farmers plead the concealment-clause defense, it did not obtain any jury findings on it. Indeed, Farmers made no further mention of this defense before the trial court or the court of appeals. In its motion for judgment and to disregard certain jury findings, Farmers asserted that its arson defense "is not based upon or dependent upon a policy provision, but rather has its foundation in the public policy of preventing a litigant from benefiting from his own wrongful act." In sum, Farmers' challenge to Daisy's right of recovery was predicated entirely on public policy grounds alone.

Farmers has attempted to revive its concealment-clause defense in its brief and oral arguments before this Court. For the first time since it filed the lawsuit, it argues that the concealment clause—and not just public policy—bars Daisy's recovery. It argues that as a matter of law, Robert's filing of a claim on property that he had deliberately destroyed was a fraud—with or without proof or findings of misrepresentation, concealment, or reliance. We decline to consider this contention because Farmers affirmatively refused to make it at either trial or on appeal until now.[41] Farmers abandoned and waived any defense to liability under the concealment clause.

Because Farmers did not preserve its concealment-clause defense, we treat the clause as if it was of no effect.[42] Accordingly, we conclude that Daisy is contractually entitled to recover the amount of her interest in the policy at the time of the loss—which, as the court of appeals held, is fifty percent of the losses that the jury found the house and its contents had sustained.[43]

## IV

We next consider whether, notwithstanding Daisy's contract rights, public policy forbids Daisy's recovery because the policy covered community property. This Court has articulated a public policy that a wrongdoer should not be rewarded for wrongdoing.[44] To prevent an arsonist from having a community interest in any recovery, Texas courts have generally conditioned an innocent spouse's recovery on whether and when the community interests in the insurance policy have been severed.[45]

Farmers argues that innocent spouses should not recover even if there is an after-the-fact partition. It contends that such a rule would encourage spouses to enter into sham partition agreements, after which the wrongdoing spouse might still benefit from the insurance proceeds. In the alternative, it argues that recovery should be barred if on the dates the claim was made and denied the arsonist would have had an interest in the insurance proceeds as community property.

40. See Oilwell 'Div. v. Fryer, 493 S.W.2d 487, 490 (Tex.1973) ("Unless fraud is established as a matter of law, ... the burden is upon [the defendant] to obtain jury findings to establish the necessary elements of his affirmative defense.").

41. See Westgate, Ltd. v. State, 843 S.W.2d 448, 454–55 (Tex.1992) (holding that Westgate waived bad faith claim by not requesting any jury issues on that claim and solely arguing negligence, not bad faith, in both the trial court and on appeal); Paragon Sales, 774 S.W.2d at 661 (holding that because respondent had not presented any exemptions, exceptions, or exclusions that could limit or deny the plaintiff's recovery, it had waived the effect of any such provisions).

42. See Tex.R. Civ. P. 94, 279, 324(c).

43. See 982 S.W.2d at 85. The policy limited an insured's recovery to the amount of the insured's interest at the time of loss. At the time of the fire Daisy had, in her own right, a one-half interest in the home. See 2 George D. Braden et al., The Constitution of the State of Texas: An Annotated and Comparative Analysis 735 (1977) ("As a general rule property acquired during marriage is community property, and one-half belongs to each spouse.").

44. See Kulubis, 706 S.W.2d at 955.

45. See supra, notes 14—27 and accompanying text.

Daisy responds that it would be arbitrary to deny recovery even when the culpable spouse would receive no benefit. It would also be unfair to require an innocent spouse to obtain a partition or divorce before the claim was filed or denied. First, it assumes the innocent spouse knows that the other spouse committed arson and can obtain an equitable partition before the insurance company denies the claim. Second, it encourages an innocent spouse whose home burns down to hastily partition or divorce, even though a jury may later acquit the suspected spouse of any alleged wrongdoing. Daisy contends that if recovery must be conditioned on partition or divorce, she should have until the time of judgment to obtain a severance of the community estate.

■ In our view, a rule conditioning an innocent spouse's recovery on partition or divorce is neither practical nor satisfactory. Partition agreements require the consent of both spouses.[46] The culpable spouse could still benefit by demanding, in exchange for his or her consent, a greater share of the remaining community estate. Or he or she could refuse to partition at all, leaving the innocent spouse with a choice between divorce and forfeiture. And an innocent spouse who wants a divorce might not be able to obtain it in time to protect her or his interest in any recovery. On the other hand, an innocent spouse who is committed to the marriage might enter into a partition agreement as a mere formality, fully intending to share any recovery with the culpable spouse. In short, a rule requiring partition may not effectively protect the innocent spouse's share or prevent the culpable spouse from benefitting. Additionally, it may have the unintended consequence of encouraging divorce.

It is not the courts' business to superintend what innocent co-insureds may do with any insurance proceeds they are contractually entitled to recover. Nor, under these circumstances, is it the courts' province to regulate an innocent spouse's marital relationship with the culpable spouse. The preferable rule is to allow innocent spouses to recover according to their contracts, regardless of partition or divorce.

■ We reaffirm our longstanding public policy preventing an arsonist from benefitting from fraud by denying recovery of his or her own one-half interest in the claim against the insurer. We conclude, however, that such public policy does not overcome an innocent spouse's contractual right to recover her or his one-half interest in the policy benefits.

The dissent raises the theoretical possibility that in the future, if the innocent spouse does not obtain a partition or divorce, and if the insurance carrier fails to prove any contractual defenses to recovery, the culpable spouse will still benefit through his or her one-half community interest in the innocent spouse's one-half recovery. But Robert does not benefit here; the partition agreement divested him of any interest in Daisy's recovery. And in the future, insurance carriers can take steps to prevent any recovery from occurring. Farmers has acknowledged that it believes the 1991 Homeowners Policy—Form B already provides insurance carriers with a contractual defense to coverage. Our opinion today should mitigate any confusion *Kulubis* caused about the availability of contractual defenses. The law, moreover, allows insurance carriers to use forms adopted by a national organization of insurance carriers, provided they are filed and approved by the Insurance Commissioner.[47] Such a form could in-

---

46. *See* Tex. Const. art. XVI, § 15; Tex. Fam. Code § 4.104 ("A partition or exchange agreement must be in writing and signed by both parties.").

47. Before 1991, insurance carriers could issue only uniform policies established and promulgated by the Texas State Board of Insur-

ance. *See* Act of June 7, 1951, 52nd Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 936, *amended by* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 2.33, 1991 Tex. Gen. Laws 939, 970. In 1991, the Legislature amended the law to allow insurance carriers to issue policy forms and endorsements adopted by a national organization of insur-

clude an intentional loss provision that voids coverage to all insureds if any insured intentionally destroys the covered property, provided, of course, the commissioner approves the provision as consonant with public policy.

Based upon the Texas Homeowners Policy—Form B terms that Daisy successfully pleaded and proved, Daisy is entitled to recover her share of the policy benefits. Farmers did not prove any policy exceptions or exclusions limiting or barring her recovery. We hold that Farmers' public policy defenses do not defeat Daisy's contractual right to recover. Accordingly, we affirm the court of appeals' judgment that she recover one half of the amount the jury awarded for the Murphys' losses.

Justice HECHT filed a concurring opinion.

Justice ENOCH filed a dissenting opinion, in which Justice OWEN joined.

Justice HECHT, concurring in the judgment.

By not addressing Texas Farmers Insurance Co.'s contractual defense based on the concealment-fraud provision of its policy, the Court is left to deciding difficult public policy issues as if they governed coverage and the provision did not exist. Public policy does not preclude, but also does not require, paying an arsonist's spouse for her share of destroyed community property. Farmers' contractual defense would deny Murphy recovery as a simple matter of contract law. The defense makes the Court's public policy decision irrelevant in almost any case in which the defense is raised. But Farmers disa-

vowed a contractual defense in the district court and did not mention it in the court of appeals. Although Farmers pleaded the defense in the district court and argued it in this Court, and although the facts concerning its applicability are undisputed, the Court properly concludes that the defense should not be urged in this Court for the first time.

Then, in a sharp about-face, the Court proceeds without hesitation to allow Daisy Murphy to recover based on an argument she has never made—not in the lower courts and not here—that she would be entitled to benefits regardless of whether she and her former husband had partitioned their community estate in their divorce. She has consistently rested her claim on her partition agreement, and the Court agrees that she can prevail on this argument. Whether a partition agreement is always necessary for recovery is an issue that should be left for another case—one in which someone actually raises it.

The Court refuses to consider an argument Farmers has actually made, but only intermittently, even though the argument will prevail in almost any other case, yet the Court rests its decision on an argument Murphy has never thought of making, even though Murphy can prevail in this case unassisted. By going out of its way to treat the parties this disparately, the Court invites the criticism that it has not acted fairly.

Murphy is entitled to recover—on the argument she makes. I therefore concur only in the Court's judgment.

ance companies if (1) they were filed with and approved by the commissioner and (2) did not reduce coverage provided by commissioner-created policy forms. *See* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 2.33, 1991 Tex. Gen. Laws 939, 970–71, *amended by* Act of May 23, 1997, 75th Leg., R.S., ch. 1330, § 13, 1997 Tex. Gen. Laws 5030, 5032 (current version at TEX. INS.CODE art. 5.35). In 1997, the Legislature repealed the requirement that carrier-created policy forms equal

or exceed coverage provided by commissioner-created policy forms. *See* TEX. INS.CODE art. 5.35(c). The law gives the commissioner the role of approving or rejecting such forms on grounds of public policy. *See* TEX. INS.CODE art. 5.35(g)(1) ("The commissioner may disapprove a policy form or endorsement filed under this article, or withdraw any previous approval thereof, if the policy form or endorsement ... contains provisions ... which are unjust ... or violate public policy.").

Justice ENOCH, joined by Justice OWEN, dissenting.

The issue the parties brought to this Court is whether post-arson division of community property allows an innocent spouse to recover insurance proceeds that she would otherwise not be entitled to recover. Confusing this issue, the Court instead appears to abandon the long-standing public policy, never questioned before this case, that an arsonist cannot benefit from his crime. I dissent.

In this case, the insurance policy's concealment/fraud clause unambiguously bars coverage for all insureds if any insured commits fraud or intentionally conceals or misrepresents a material fact. Had Farmers asserted the concealment/fraud provision as a defense to coverage, that provision would have prevented both Daisy and Robert from recovering any benefits under the policy because Robert's filing a claim on property that he deliberately destroyed was a fraud. But Farmers expressly refused to make this argument. Thus, I agree with the Court that Farmers waived any defense under the policy's concealment/fraud clause. I cannot agree, however, with the Court's public policy analysis.

The Court today articulates a position heretofore unknown in Texas jurisprudence: The public policy preventing an arsonist from benefitting from his crime "does not overcome an innocent spouse's contractual right to recover her or his one-half interest in the policy benefits" because "[t]he ... rule [the Court prefers] is to allow innocent spouses to recover according to their contracts, *regardless of partition or divorce.*"[1] This sounds reasonable enough, but what does it really say? It really says: **an arsonist can now benefit from his crime.** For if an arsonist destroys his community property home and his innocent spouse recovers her communi-

ty interest, he recovers too; that's what "community property" means.

The Court tries to deflect this abandonment of sound public policy by remarking that it "reaffirm[s] our longstanding public policy preventing an arsonist from benefitting from fraud by denying recovery of his or her own one-half interest in the claim against the insurer."[2] But the Court does nothing of the sort. First, had there been no partition, the Court's "prefer[red] rule" would permit Robert the arsonist to recover by allowing Daisy to recover even if the assets are community. And second, the Court does not deny Robert recovery, because it cannot—Robert has no claim before this Court! Robert did appeal to the court of appeals, where he lost. But he did not petition this Court for review. So contrary to its bold assertion, the Court does not reaffirm longstanding public policy that arsonists should not benefit from their crime.

The Court also tries to obscure the meaning of its "prefer[red] rule" by commenting that my dissent "raises the theoretical possibility" that a future arsonist might benefit under the Court's rule.[3] I don't "raise" any "possibilities"; I just point out that that's what the result is under the Court's "prefer[red] rule."

And that "rule" is unprecedented (which explains why the Court doesn't cite any precedent for it). The only reported decisions that consider this issue both conclude that if benefits would inure to the community and thus to the arsonist, the innocent spouse cannot recover.[4] And just two years ago, we agreed with this conclusion because we denied the application for writ of error in the only case that has presented the issue to this Court, *Chubb Lloyds Insurance Company v. Kizer.*[5] We did so precisely because before today there has

---

1. 996 S.W.2d at 881 (emphasis added).

2. *Id.*

3. *Id.*

4. *See Chubb Lloyds Ins. Co. v. Kizer,* 943 S.W.2d 946, 952 (Tex.App.—Fort Worth 1997,

writ denied); *Norman v. State Farm Fire & Cas. Co.,* 804 F.2d 1365, 1366–67 (5 th Cir. 1986).

5. 943 S.W.2d at 948.

never been any conflict or confusion about the principle that an arsonist cannot benefit from his crime.

Not only is the Court's "prefer[red] rule" unprecedented, it is also unwarranted. The principle that an arsonist cannot benefit from his crime is not even under attack in this case (except by the Court). The only issue that has divided Texas courts, the only issue that the parties briefed, and the only issue that needs to be decided in this case is whether divorce or partition after the intentional torching of the property allows the innocent spouse to recover assets that at the time of the loss were community.[6] I say no.

As the Fifth Circuit correctly concluded in *Webster v. State Farm Fire & Casualty Company,* post-arson partition or divorce should not result in recovery for the innocent spouse.[7] The *Webster* court reasoned that "[a]t all points of time pertinent to State Farm's decision to deny recovery— the date the policy was issued, the date of the fire, the date the Websters filed their claim, and the date the claim was refused—the property was community."[8] Similarly here, at the time of the arson, Daisy and Robert's home was undisputedly a community asset. Whether spouses divorce or partition after the arson does not affect the public policy analysis. The public policy remains the same in this situation—the arsonist may not benefit from his crime, nor may the arsonist's community benefit.

True, the Family Code allows spouses to "partition or exchange between themselves any part of their community property, then existing or to be acquired."[9] But this statutory right cannot be employed, through post-arson acts, to convert an oth-

erwise unenforceable contract into an enforceable one. And because the "innocent spouse" cannot unilaterally partition but must have the consent of the "guilty spouse,"[10] to allow partition after the arson would permit the arsonist to control whether there is coverage. By not agreeing to partition, the arsonist prevents coverage, and by agreeing to partition, the arsonist creates coverage. This control over partition may allow the arsonist to force the innocent spouse to give up part of the remaining community estate in exchange for the arsonist's consent to partition. Public policy does not permit this.

Moreover, allowing post-arson acts to control whether there is recovery also runs the risk of collusion between spouses to create coverage through sham partitions or divorces. The arsonist would be allowed to recover, but only if he follows his original fraud, the arson and insurance claim, with a subsequent fraud, a sham partition or divorce. Again, public policy precludes such a result.

But rather than tackling the case as it was presented to us, the Court's "prefer[red] rule" is that Daisy and Robert's partition meant nothing; she recovers regardless. And adding further confusion, the Court, after announcing its "prefer[red] rule" and noting my criticism of it, responds to that criticism with the pithy observation that "Robert does not benefit here; the partition agreement divested him of any interest in Daisy's recovery."[11] So I guess the partition mattered after all.

Unfortunately, under the somewhat contradictory positions of not wanting to "encourag[e] divorce" but also not wanting "to regulate an innocent spouse's marital relationship with the culpable spouse,"[12] the

---

**6.** *Compare Webster v. State Farm Fire & Cas. Co.,* 953 F.2d 222, 224 (5 th Cir.1992) (holding that innocent spouse does not recover despite prejudgment divorce), *with Travelers Cos. v. Wolfe,* 838 S.W.2d 708, 712 (Tex.App.—Amarillo 1992, no writ) (holding that innocent spouse may recover because of prejudgment divorce).

**7.** 953 F.2d at 224.

**8.** *Id.* at 223.

**9.** TEX. FAM.CODE § 4.102.

**10.** *See* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE § 4.104.

**11.** 996 S.W.2d at 881.

**12.** *Id.* at 881.

Court sends a signal to arsonists that if they just don't tell their spouse that they burned the house down, they might get part of the insurance proceeds. Public policy should be anchored to a more secure footing. I would simply hold that if the destroyed property is a community asset at the time of the loss and it is determined that a community member was the arsonist, public policy bars recovery for either spouse. And a post-loss, prejudgment partition or divorce or a determination of innocence of the other community member does not change this. Although it is unfortunate that under this rule some truly innocent spouses, such as Daisy, would not recover, it would be even more unfair to allow the arsonist to control whether there is recovery and to shift the costs of his or her intentional misconduct to other policy holders who must now pay for arson while the arsonist can benefit from it.

The long-standing public policy of this state is that an arsonist cannot benefit from his or her crime. When a recovery benefits the arsonist's community estate, the arsonist benefits. An innocent spouse cannot avoid the application of this policy by a post-arson partition of the community estate. Thus, I dissent.